**Cornelious PERRY, Petitioner,**

v.

**Harold E. WATTS, Acting Superintendent, California Medical Facility, Vacaville, California, Respondent.**

**No. C–81–670 RPA.**

United States District Court,
N. D. California.

June 30, 1981.

As Amended Aug. 17, 1981.

Mark Fogelman, Deputy State Public Defender, San Francisco, Cal., for petitioner.

Kristofer Jorstad, Deputy Atty. Gen., San Francisco, Cal., for respondent.

## MEMORANDUM DECISION AND ORDER

AGUILAR, District Judge.

### I. PROCEDURAL HISTORY

Petitioner was convicted of violating California Penal Code section 245(a), assault by means of force likely to produce great bodily injury, following a jury trial in a State of California trial court. Petitioner appealed the conviction to the California Court of Appeal contending that the trial judge improperly excluded evidence, pursuant to California Evidence Code section 352, that another person may have committed the offense with which petitioner was charged. The Court of Appeal affirmed the lower court decision in a two to one decision; a vigorous dissent being filed. *People v. Perry*, 104 Cal.App.3d 268, 164 Cal.Rptr. 522 (1980). The California Supreme Court denied the petition for a hearing, filed by petitioner, with two Justices being of the opinion that the petition should be granted. After requesting a response from the Attorney General of the State of California, the United States Supreme Court denied the petition for writ of certiorari filed by petitioner. Petitioner now brings this petition for writ of habeas corpus alleging that he is unlawfully incarcerated and restrained in a California prison, specifically, the California Medical Facility in Vacaville.

### II. FACTS

In the afternoon of November 3, 1978, female victim was walking through Golden Gate Park. Victim was to meet a group of college classmates at the Hall of Flowers at 5:00 p. m. Victim was not sure where the Hall of Flowers was, and sought directions from a woman who was jogging with a man with a dog. When victim asked for directions, the man and his dog stopped to assist her, but the woman kept on jogging. The man gave victim directions, and said he would walk with her. Though victim requested that he not walk with her, the man continued to do so. The man asked if victim wanted some money, and pulled out some bills; victim responded that she did not. After victim and the man emerged from a tunnel in the path, the man grabbed victim around the neck. As victim screamed the man tried to pull her up a hill, and then hit her face and banged her head against the trees that she was clinging to so as not to be taken up the hill. Victim's screams brought persons to the scene, and the man fled. One of the citizens who responded to the screams chased the man. As the chase neared the Park Police Station, the citizen went into the station to get assistance. As the citizen and police officers exited the station, the citizen saw the man he believed he had been chasing standing on the sidewalk near the station. The police arrested this man, who was petitioner.

At trial victim identified petitioner as the man that had assaulted her. Her identification was partly based on recognition of a scar on petitioner's forehead. Other witnesses identified petitioner as the man that they had seen watching them play a soccer game shortly before the attack, and the man they saw running from the area of the

attack after they heard screams from that area.

Petitioner testified that he did not commit the offense charged, and that he had not even been in Golden Gate Park that day. Petitioner stated that he had parked in a food store parking lot near the park and had taken his dog for a walk at a large grassy area near the police station. He testified that as he was returning to his car from the walk, he was arrested by police.

Prior to commencement of the trial petitioner's attorney sought to introduce, as petitioner's sole defense (besides petitioner's own testimony), evidence that could prove that a Matthew Wolfe had actually been the man who attacked victim. The proffered evidence consisted of two witnesses. The first witness was a victim who had been raped by Wolfe on the same date as the victim attack (November 3), but three years earlier. This rape took place in the same area of the park as the victim attack, and the victim had been engaged in conversation by Wolfe while walking down a path in the park before he grabbed her by the neck, pulled her into the bushes, and raped her. The second witness was the victim of a rape by Wolfe that occurred only an hour prior to the victim's assault. This rape occurred in a nearby area of the park, and the victim was assaulted, robbed, and raped.

Defense counsel recited to the trial judge many facts in favor of allowing the jury to consider the evidence. Among them: both petitioner and Wolfe had sectionally braided hair on November 3, 1978; both men are black and similar in height, weight, and build; on the day of the assault both men were wearing similar clothing (blue pants, brown colored jackets); and the modus operandi of the attacker in the witnesses' crimes was similar to the modus operandi in the attack on victim.

The trial judge refused to admit this evidence pursuant to California Evidence Code section 352.

After the prosecution's case-in-chief had been presented, defense counsel renewed the request to admit the testimony because inconsistencies in the testimony of prosecution witnesses had made the possibility more likely that Wolfe, and not petitioner, had committed the charged offense. Some inconsistencies that developed were: a witness had identified petitioner largely because of his hairstyle and clothing (which were similar to Wolfe); the evidence showed that petitioner had not been carrying a wallet on the day of the attack, even though victim testified that he brought out a wallet when he offered her money.

The trial judge again ruled the evidence inadmissible pursuant to Evidence Code section 352. In support of his ruling the judge stated a number of factors in support of his decision, important among them were that pictures of petitioner and Wolfe indicated that facially the two were not similar, and that only petitioner had the scar identified by victim and the dog identified by victim and other witnesses. The judge found that to admit this evidence would be speculative, would open up collateral issues, and would confuse the jury.

Petitioner was convicted by the jury and sentenced to prison for the middle term of three years.

## III. DISCUSSION

California Evidence Code section 352 provides:

> The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

It is this latter portion of section 352 that the trial judge relied on in making his ruling.

Evidence Code section 352 is the statutory basis for admitting or excluding evidence indicating that a third person actually committed the crime with which a defendant has been accused. But even before the enactment of section 352, California courts developed rules for determining whether to admit such evidence.

In *People v. Mitchell*, 100 Cal. 328, 34 P. 698 (1893) the California Supreme Court set forth a general rule that "[i]t is always proper to show that some other person, and not the defendant committed the crime with which he is charged." *Id.* at 333–34, 34 P. 698. This general statement was limited somewhat by *People v. Mendez*, 193 Cal. 39, 223 P. 65 (1924), *overruled on other grounds* in *People v. McCaughan*, 49 Cal.2d 409, 420, 317 P.2d 974 (1957).

In the *Mendez* case a rancher near the Mexican border was killed and his family assaulted after three Mexicans who had asked for work and been refused had talked with the rancher. At trial the family members identified defendants as the men they had seen with their father asking for work, and as the men that had assaulted them. The trial judge excluded testimony proffered by defense counsel that could show that persons other than defendants committed the charged offenses. This evidence consisted of testimony that the rancher had altercations with several of his Mexican workers in the days before his death, that the workers' descriptions corresponded to those of defendants, and that the day after the rancher was killed the workers quit their jobs and apparently fled. *Id.* 193 Cal. at 49–50, 223 P. 65.

The California Supreme Court upheld the rulings of the trial judge. Although the Court quoted the *Mitchell* statement noted above, the Court was concerned about the "kind and quality" of evidence that could be admitted. As to this the Court stated:

It seems clear that a defendant, in order to exculpate himself, should not be required to establish the guilt of a third person with that degree of certainty requisite to sustain a conviction of the latter. On the other hand, it seems equally clear that evidence which simply affords a possible ground of possible suspicion against another person should be inadmissible.

*Id.* at 51, 223 P. 65.

To admit evidence that a third person committed the crime charged, the Court held that there must be some evidence tending to directly connect this other person with the actual commission of the crime. *Id.* The Court found that the descriptions of the men who had quit their jobs, as the only evidence tending to directly connect them with the commission of the crime, were so general and indefinite that they could apply to hundreds of persons. *Id.* Thus, the required evidentiary showing was not met to permit introduction of the evidence. *See also People v. Buono*, 191 Cal.App.2d 203, 12 Cal.Rptr. 604, 617–19 (1961).

In *People v. Edmond*, 200 Cal.App.2d 278, 228–29, 19 Cal.Rptr. 302 (1962), the trial court struck the testimony of a defense witness concerning other robberies that had been committed in the area while the defendant was in jail after being arrested for the commission of five robberies. These robberies which the witness would have testified to were similar in modus operandi to those with which the defendant was charged. *Id.* at 279–80, 19 Cal.Rptr. 302. The Court of Appeal upheld the trial judge's ruling stating that to permit a defendant to show that another person committed the crime with which he is charged does not mean that there may be unlimited inquiry into collateral matters, rather, the inquiry is strictly limited to pertinent evidence. *Id.* at 281, 19 Cal.Rptr. 302. The Court then stated that "the mere possibility that some person did it is not enough," but rather there must be some competent and substantial proof of a probability that this third person committed the charged offense. *Id.* The Court found that the stricken testimony did not come within this rule as there was nothing in the testimony to even suggest that the robberies with which the defendant was charged were committed by the same man that allegedly committed the other robberies. *Id.*

The cases following enactment of section 352 set forth the same strict test of admissibility of evidence that a third party committed a charged offense. In *People v. Arline*, 13 Cal.App.3d 200, 91 Cal.Rptr. 520 (1970), the defendant was convicted of armed robbery of a service station. The trial court had excluded evidence which defendant had contended tended to show that some other person had committed the

charged offense. Defendant proposed to show that two months after the charged robbery a different individual robbed a service station, that the description of this individual was similar to defendant's, that the modus operandi in each robbery was similar, and that the individual was in the area at the time of the charged offense. *Id.* at 203, 91 Cal.Rptr. 520. In excluding the evidence the trial judge observed little resemblance between the two men, and noted some differences in the modus operandi of the two offenses, ruling that the evidence was of no probative value and that there was insufficient evidence to connect the other individual with the charged offense. *Id.*

The Court of Appeal upheld the decision of the trial judge. The Court first stated that evidence tending to prove that another person committed the charged offense is subject to certain limitations. *Id.* at 204, 91 Cal.Rptr. 520. The Court recited the *Mendez* rule, and then concluded that before such evidence can be admitted, it must "pass the test of affording at least more than a possible ground of possible suspicion." *Id.* The Court then stated that the facts before the trial court to connect the third person with the crime were nonexistent. Thus, the proffered testimony "had no probative value and little if any relevance; the only possible effect it could have on the outcome of the case would have been to create suspicion and, hence, prejudice in the minds of the jurors." *Id.* at 205, 91 Cal.Rptr. 520.

In *People v. Green*, 27 Cal.3d 1, 164 Cal. Rptr. 1, 609 P.2d 468 (1980) the California Supreme Court stated the rule as follows:

> It is settled ... that evidence that a third person had a motive to commit the crime with which the defendant is charged is inadmissible if it simply affords a possible ground of suspicion against such person; rather, it must be coupled with substantial evidence tending to directly connect that person with the actual commission of the offense.

*Id.* at 22, 164 Cal.Rptr. 1, 609 P.2d 468. Thus, the Court found that the proffered evidence showed only general proof of an opportunity to commit the crime and a criminal disposition. As such evidence raises at most only a possibility that the third person may have committed the charged offense, the evidence is inadmissible. *Id.* at 23, 164 Cal.Rptr. 1, 609 P.2d 468. The Court explained the rule as being "designed to place reasonable limits on the trial of collateral issues ... and to avoid undue prejudice to the People from unsupported jury speculation as to the guilt of other suspects...." *Id.* at 22, 164 Cal.Rptr. 1, 609 P.2d 468, citations omitted; and *see People v. Guillebeau*, 107 Cal.App.3d 531, 549–50, 166 Cal.Rptr. 45 (1980).

Thus, in California a trial judge must exclude proffered evidence that a third person committed the charged offense where such evidence does not constitute substantial proof of the probability that the third person committed the charged offense but merely affords a possible ground of suspicion. There are two elements to this rule. For the evidence to be admissible: (1) the proffered evidence must directly connect the third person with the commission of the offense, and (2) this evidence must be of a "substantial" character. It is clear from the trial judge's ruling in the present case that he applied the California case-developed rules in refusing to admit petitioner's proffered evidence. Although the judge focused in part on the likelihood that petitioner actually committed the offense by emphasizing that petitioner and not Wolfe had a scar and was accompanied by a dog, and such considerations are not provided for by the case law, defense counsel was not able to offer evidence that directly connected Wolfe to the charged offense, and such evidence clearly was not substantial.

In criminal trials in the federal courts trial judges are also permitted discretion in determining whether to admit evidence that a third party committed the charged offense. Since its enactment, Rule 403 of the Federal Rules of Evidence has served as the statutory basis for the exercise of the trial judge's discretion, and Rule 403 is vir-

tually identical to California's Evidence Code section 352. However, the federal cases interpreting the proper exercise of this discretion do not set forth any formal standards for admissibility of this evidence, as has been done by the California courts. the federal cases indicate that the discretion of the trial judge may not be exercised as broadly as in the California courts in excluding evidence that a third party committed the crime charged, and there appears to be a definite preference for the admission of such evidence.

An early example is *Alexander v. United States*, 138 U.S. 353, 11 S.Ct. 350, 34 L.Ed. 954 (1891). In that case a witness had observed defendant and an impending murder victim riding their horses on a road. Minutes later, the horses were standing on the road without riders. Shots then rang out, and the witness next saw the defendant leaving on his horse and leading the victim's riderless horse. The trial court refused to permit evidence that at the time of the murder, a Mr. House and companions were riding around the neighborhood with guns hunting for the victim because the victim apparently was having an affair with House's wife. *Id.* at 355–56, 11 S.Ct. at 351.

Although the Supreme Court did not decide whether it was error not to admit the evidence, the Court stated:

> ... we recognize a certain discretion on the part of the trial judge to rule out ... testimony ... of the acts and declarations of House, if, in his opinion, they were so remote or insignificant as to have no legitimate tendency to show that House could have committed the murder. If, for instance ... the two occurrences were so remote in time and place as to demonstrate that there could have been no connection between them, it would be the duty of the court to exclude the testimony. But, if on the other hand, the time, and circumstances attending the murder were uncertain or obscure, the conduct and threats of House might have

a material bearing upon the identification of the murderer.

*Id.* at 356–57, 11 S.Ct. at 351.

The language suggesting that only if the evidence has "no legitimate tendency" to show that the third person could have committed the charged offense should the trial judge exclude that evidence provides for quite a limited amount of discretion available to the trial judge, and certainly sets forth a stricter standard for exclusion of such evidence than is set forth by the California courts.

In *U.S. v. Armstrong*, 621 F.2d 951 (9th Cir. 1980) the Court of Appeals found that the exclusion of evidence that a third party may have committed the charged offense was error. In that case there was eyewitness testimony that defendant had committed the charged bank robberies. However, defendant claimed that he had not participated in the robberies, and produced a witness who stated that he had been with defendant at the time of two of the robberies. Despite the fact that identity was therefore in question, the trial court excluded as irrelevant evidence that another person, who matched the description of the robber, had used $3,000 in bait bills taken from one of the banks to purchase a car following the robberies. *Id.* at 953. In support of its holding that the exclusion of the evidence was error, the Court of Appeals stated:

> Fundamental standards of relevancy, subject to the discretion of the court to exclude cumulative evidence and to insure orderly presentation of a case, require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged.

*Id.*

And in *U.S. v. Robinson*, 544 F.2d 110 (2nd Cir. 1976), *cert. denied*, 434 U.S. 1050, 98 S.Ct. 901, 54 L.Ed.2d 803 (1978), a bank surveillance camera photographed three bank robbers. Although there was question as to the identity of one of the robbers, defendant was arrested and charged as the third bank robber. At trial defendant

sought to introduce evidence that on the day following the robberies F.B.I. agents brought the bank photo to a local jail and showed it to correctional officers who identified the third robber as one Turner. Turner resembled defendant, and at the time of the robbery Turner was at large and was suspected of the commission of two other armed robberies within the previous two months. *Id.* at 112–13.

Even though the identity of the third robber was the central issue in the trial, the trial judge refused to admit the evidence proffered by defendant. The Court of Appeals reversed, holding that as the principal issue in the case was identity, evidence that a third party may have committed the robbery was clearly probative, and the reasons for excluding the evidence stated by the trial judge (the primary reason being repetition of evidence) did not justify exclusion of the evidence. *Id.* at 113.

 In summary, although the federal courts have not established a standard test to be applied in all cases where evidence that a third party may have committed a charged offense is sought to be introduced, the courts are lenient in allowing such evidence, and minimize the discretion in the trial judge to exclude such evidence.[1] The evidence which the Supreme Court would probably have admitted in *Alexander,* and the evidence which the *Robinson* Court held could not be excluded, would probably be inadmissible in California courts as the evidence was not sufficiently substantial to connect the third person with the charged offense. And it is a good possibility that the evidence proffered by petitioner in the instant case would have been admitted in a federal court trial.

It is interesting to note that Wigmore's position is that evidence of commission of a crime by a third person should be admitted if it raises the "slightest likelihood" of the third party's commission of the crime, re-

jecting an "absolute proof" or "strong probability" standard. 1 Wigmore, Evidence, § 139, p. 573. In support, Wigmore states that it is "difficult to see the object" of the stricter tests "because if the evidence is really of no appreciable value, no harm is done in admitting it; while if it is in truth calculated to cause the jury to doubt, the Court should not attempt to decide for the jury that this doubt is purely speculative and fantastic, but should afford the accused every opportunity to create this doubt. A contrary rule is unfair to the really innocent accused." 1 Wigmore, *supra* at 574. Thus, pursuant to the standard urged by Wigmore, most evidence that a third party committed a charged offense will be admitted and the trial judge is given very limited discretion in excluding such evidence. This standard is far more liberal than the California standard, and the evidence proffered by petitioner in the instant case would have been admissible pursuant to the Wigmore standard as it raised a slight likelihood that Wolfe committed the charged offense: Wolfe was similar in appearance to petitioner, the modus operandi of the crime was similar to past crimes by Wolfe, and Wolfe had the opportunity to commit the crime as he had committed a similar attack in the same area of the park just an hour earlier.

 Whether the evidence proffered by petitioner would have been admitted in the federal court or admitted pursuant to a different standard will not entitle petitioner to relief, however. Rather, to be entitled to the relief he seeks, petitioner must prove that his fundamental rights, as secured by the Constitution, were violated by the state court proceedings. *Rogers v. Peck,* 199 U.S. 425, 434, 26 S.Ct. 87, 89, 50 L.Ed. 256 (1905). The question then is whether the California trial court's application of Evidence Code section 352 and the California case law setting forth the standards pursuant to which a court may admit evidence that a third party committed the charged offense, vio-

---

1. *Cf. U.S. v. Brannon,* 616 F.2d 413, 417–18 (9th Cir.), *cert. denied,* 447 U.S. 908, 100 S.Ct. 2993, 64 L.Ed.2d 858 (1980) where the Court of Appeals stated that the trial court should have admitted evidence consisting of photos of a

third party who may have committed the charged offense in determining the identity of a bank robber, but that the refusal to admit the evidence was not an abuse of discretion.

lated petitioner's constitutional rights. The constitutional right which petitioner asserts was violated is the right to present a defense, as guaranteed by the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. It should be noted that although these constitutional claims were asserted in the state courts, the California Court of Appeal declined to address the issue, holding only that the trial court had engaged in a proper exercise of discretion in excluding the evidence.

The Court believes that the constitutional considerations applicable to this case are significant. The United States Supreme Court has stated that "few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). In *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) the Court thoroughly examined the importance of the right to present witnesses in its ruling that a state evidentiary rule that disallows a co-participant from testifying for the defendant on trial is unconstitutional as violative of the Sixth Amendment right to offer a defense, guaranteed to state criminal defendants through the Fourteenth Amendment. The Court stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id.* at 19, 87 S.Ct. at 1923.

■ A state may condition the defendant's right to present evidence on reasonable rules of evidence and procedure designed to further legitimate state interests in the fairness and reliability of the trial

process. *Chambers v. Mississippi, supra*, 410 U.S. at 302, 93 S.Ct. at 1049; *Hackett v. Mulcahy*, 493 F.Supp. 1329, 1335 (D.N.J. 1980), but when the defendant's Sixth Amendment right to present *exculpatory* evidence is threatened by the rules, there must be substantial competing state interests to overcome the claims of the defendant. *See McMorris v. Israel*, 643 F.2d 458, 460–61 (7th Cir. 1981); *Pettijohn v. Hall*, 599 F.2d 476, 480–81 (1st Cir. 1979), *cert denied*, 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315. A constitutional right to present exculpatory evidence is most likely found where the evidence is critical to the accused's defense. *Chambers, supra*, 410 U.S. at 302, 93 S.Ct. at 1049; *Pettijohn, supra*, 559 F.2d at 480.

Although a ruling made pursuant to Evidence Code section 352 is technically an exercise of discretion, because the California courts have established fairly formal standards for how that discretion is to be exercised by the trial judge, this Court is in actuality reviewing the constitutional validity of a state evidentiary rule as applied to petitioner's proffered evidence. It should be noted that numerous state evidentiary rules which advanced legitimate state interests have bowed to the accused's right to present relevant evidence to the jury. *Pettijohn, supra* at 481, citing to *Washington v. Texas, supra* (rule barring co-conspirators from testifying), *Chambers v. Mississippi, supra* (law excluding third party hearsay confessions), *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), (juvenile privilege statute), *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), (executive privilege).

■ In order to determine whether a constitutional violation has occurred, the Court must evaluate the proffered evidence and determine whether it is exculpatory and determine whether the evidence was crucial to defendant's presentation of his case. If the evidence is found to be exculpatory and crucial, the Court must then balance the interests of the petitioner in admitting the evidence for the jury's consideration against the competing interests

of the state in its procedural rule preventing petitioner from presenting this evidence at trial. *See, e. g., McMorris v. Israel, supra*, 643 F.2d at 461; *see also Chambers v. Mississippi, supra*, 410 U.S. at 302–03, 93 S.Ct. at 1049; *Pettijohn v. Hall, supra*, 599 F.2d at 480–81.

■ Although the Court is seriously concerned about the validity of the California standard for admitting evidence that a third party committed the charged offense when applied to other factual settings, (*see* discussion *infra*), in the present case the Court finds that the evidence proffered by petitioner is neither exculpatory nor crucial, and therefore there has been no constitutional violation entitling petitioner to habeas corpus relief.

As petitioner's defense in the present case is that he did not commit the charged offense, it is true that the key issue in the case was the issue of identity. It is also true that the proffered evidence raises a slight possibility that Wolfe actually committed the charged offense: Wolfe was similar in appearance to petitioner, and Wolfe had committed a crime similar to the charged offense just an hour earlier in the same area of Golden Gate Park. But such evidence is not of sufficient exculpatory significance to accord it constitutional importance. Although the identity of petitioner as the perpetrator of the offense was an issue at the trial, the issue of *mistaken identity* was not legitimately raised by the evidence that was adduced at trial. The evidence that Wolfe was the perpetrator of the offense was offered to raise doubts in the minds of the jurors that Krantz and other witnesses were correct in their identification of petitioner as the person who attacked victim, *i. e.*, that victim mistakenly identified petitioner as her attacker. But the evidence that was presented at trial indicates that there was no likelihood of mistaken identification, and therefore this evidence was not crucial to petitioner's defense. Two major evidentiary points make mistaken identification non-exculpatory in this case. First, victim's attacker was identified by victim and by other witnesses as

being accompanied by a dog. Petitioner was accompanied by a dog, and in fact testified to this; there is no evidence that Wolfe was accompanied by a dog. Second, victim identified her attacker in part by the scar on his face. Petitioner had such a scar, Wolfe did not have such a scar. Thus, the evidence proffered by petitioner would not be exculpatory and would not make a critical difference to petitioner's defense. As the proffered evidence is not exculpatory and is not crucial to petitioner's defense, there has been no violation of petitioner's constitutional rights. As there has been no implication of constitutional rights, the Court need not reach the next step of balancing the interests of the defendant in admitting the evidence against the interests of the state in excluding the evidence.

A brief discussion of *Pettijohn v. Hall, supra*, will help illustrate why petitioner's proffered evidence was not sufficiently exculpatory and critical to implicate his constitutional rights. In that case the defendant sought to introduce evidence that a witness, who at trial identified defendant as the culprit, had, the day following the crime, first identified a third person as the culprit from a series of photographs which included the photo of defendant. (This identification evidence had been earlier suppressed because of questionable police tactics involved in the witness' secondary identification of the defendant as the culprit.) *Id.* at 477–78. The Court found this evidence exculpatory and crucial to defendant's presentation of his case because the prosecution had rested solely on the witness' in court identification, the witness had previously known defendant and logically should have been able to immediately recognize him, and there was no other significant evidence that defendant had committed the charged offense. *Id.* at 478, 480. Thus, in *Pettijohn* the identification made by the witness was in doubt and there was no other evidence that defendant had committed the charged offense. In petitioner's case, there was no reason to doubt the identification made by Krantz, and there was compelling independent evidence that petitioner was the person who committed the charged offense.

Although the Court must hold that in the present case the application of Evidence Code section 352 and California case law governing the admission of evidence that a third party committed a charged offense does not violate the Sixth Amendment right of the defendant to present evidence, the Court can conceive of many possible fact situations where application of the California standards will infringe this constitutional right. Even supposing that the evidence proffered by a defendant was identical to the evidence proffered by petitioner herein (*i. e.*, the evidence raises a slight possibility that a third person committed the charged offense), there are numerous circumstances which could arise where this kind of evidence will be exculpatory and crucial to the accused's defense. For example, if such evidence were to be proffered in a situation where there is only one prosecution witness, the witness making only a general identification of the defendant as the perpetrator, and where the defendant denies his involvement in the charged offense, evidence raising only a slight possibility that a third person committed the charged offense would be exculpatory and critical to the defendant's defense. And when balancing the interests of the accused in presenting this evidence and the state in excluding it, the state's interests pale in comparison. The primary reason asserted for the California rule is the protection of the prosecution from prejudicial evidence in the minds of the jurors. *People v. Arline, supra,* 13 Cal.App.3d at 206, 91 Cal.Rptr. 520. But jurors should be able to decide for themselves whether the evidence is merely speculative or of significance when the evidence is exculpatory and crucial to the accused's defense, and the accused should be afforded the opportunity to create *reasonable* doubt in the minds of the jurors. Furthermore, the prosecution will have a full opportunity to introduce rebuttal evidence to prove that this third person did not commit the crime charged and that the defendant did, thus minimizing any prejudice caused by the introduction of the evidence. The Court believes that the federal cases, and Wigmore's formulation of the standards to apply in admitting evidence that a third party committed a charged offense, are more in line with federal constitutional requirements.

GOOD CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED that petitioner's petition for writ of habeas corpus is DENIED.