UNITED STATES of America, Plaintiff-Appellee,

v.

Dwight ARMSTRONG, Defendant-Appellant.

No. 79–1109.

United States Court of Appeals, Ninth Circuit.

June 9, 1980.

Rehearing Denied July 10, 1980.

Mark E. Merin, Kanter, Williams, Merin & Dickstein, Sacramento, Cal., for defendant-appellant.

Julian G. Macias, Asst. U. S. Atty., Sacramento, Cal., on brief; Fern M. Segal, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before KENNEDY and ANDERSON, Circuit Judges, and SCHWARTZ,* District Judge.

KENNEDY, Circuit Judge:

Dwight Armstrong appeals his convictions for three armed bank robberies. We

---

* Honorable Edward J. Schwartz, United States District Judge for the Southern District of California, sitting by designation.

agree with appellant that the trial court erred in excluding evidence which indicated that another man may have committed one of the robberies, and we reverse his conviction on that count. The convictions on the remaining counts are affirmed.

The first robbery charged against Armstrong was of the World Savings & Loan Association in Sacramento on July 11, 1978. Armstrong was also charged with two robberies that occurred only thirty minutes apart on August 14, 1978. At 2:15 p. m. on that day a man robbed the American National Bank in Sacramento. Thirty minutes later a man robbed a branch of the Bank of America in Sacramento.

The evidence linking Armstrong to the World Savings robbery on July 11 and the American National robbery on August 14 consisted primarily of eyewitness testimony by tellers. As for the Bank of America robbery, there was eyewitness testimony (including the testimony of one teller who saw the full face of the robber when his bandana fell down), as well as evidence that Armstrong was in possession of bait bills taken in that robbery and a newspaper clipping describing the crime.

Armstrong's defense was based largely on alibis. He testified that he was at his cousin's house at the time of the World Savings robbery. A witness testified he was with Armstrong in Oakland on the day of the August 14 robberies in Sacramento. The defense also attempted to introduce evidence that another person, who matched the description of the American National Bank robber, had used $3,000 in bait bills taken from the American National Bank to purchase a car the day after that robbery occurred. The district court excluded the evidence as irrelevant. The jury convicted Armstrong on all three counts.

*Exclusion of Testimony*

■ We hold it was error to exclude as irrelevant testimony that another man, matching the description of the American National Bank robber, had used bait money

taken in that robbery to purchase a car. Fundamental standards of relevancy, subject to the discretion of the court to exclude cumulative evidence and to insure orderly presentation of a case, require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged. *See Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); *Pettijohn v. Hall*, 599 F.2d 476, 482 (1st Cir.), cert. denied, 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979); *United States v. Robinson*, 544 F.2d 110, 113 (2d Cir. 1976), cert. denied, 434 U.S. 1050, 98 S.Ct. 901, 54 L.Ed.2d 803 (1977); *Holt v. United States*, 342 F.2d 163, 165–66 (5th Cir. 1965). The exclusion of this testimony was prejudicial, and we reverse the conviction on count II.

We disagree with the appellant, however, that the exclusion of evidence that another person may have committed one of the robberies requires reversal of the convictions for the other two crimes. The evidence linking appellant to the Bank of America robbery was overwhelming. We do not believe, moreover, that the erroneous exclusion of the evidence had any bearing on the conviction for the World Savings robbery which occurred in a different bank and over a month earlier.

*Motion to Sever*

Appellant moved before trial for severance of each of the offenses charged against him. The trial court denied appellant's request that each of the three offenses be tried before a different jury. On appeal Armstrong argues that the denial of severance constituted reversible error because he wished to take the stand and testify in his own behalf only with regard to two of the robberies and that the denial of the severance motion forced him to testify about the third robbery.[1]

We reject this argument. Joinder of offenses is allowed under Fed.R.Crim.P. 8(a) when the offenses charged "are of the same

---

1. Appellant also argues denial of severance was prejudicial because an alibi witness for the August 14 robberies was available only for a brief interview before testifying. This claim is without merit.

or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Armstrong was charged with three armed bank robberies which were committed in Sacramento. Two of the robberies were committed on the same day and the other about a month earlier. Appellant produced the same alibi evidence as a defense to the two August 14 robberies. These two robberies were clearly part of the same transaction or series of transactions and all of the robberies could be considered as transactions constituting part of a common scheme or plan.

 We have held that joinder is the rule rather than the exception and that the burden is on the defendant in his appeal following denial of the motion to sever to show that joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever. *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977); *see United States v. Campanale*, 518 F.2d 352, 359 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976); *United States v. Thomas*, 453 F.2d 141 (9th Cir. 1971), *cert. denied*, 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972). Appellant has not carried this burden here. Appellant's argument that he wished to testify only about two of the robberies and not about the third and that failure to sever prevented this is without merit. No need for severance on self-incrimination grounds exists "until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *Baker v. United States*, 401 F.2d 958, 977 (D.C.Cir.1968) (per curiam), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). *Accord, United States v. Bronco*, 597 F.2d 1300, 1303 (9th Cir.

1979). Though it is arguable whether the defense established that Armstrong had a strong need to refrain from testifying on count I, the defense made no showing at all in arguing the severance motion that Armstrong had important testimony to give on counts II and III.

*Photogrammetry Experiments*

Appellant claims that the district court committed reversible error when it quashed subpoenas duces tecum which would have permitted the defense to gain access to two of the victim banks. The defense attempted to conduct photogrammetry experiments in the banks in which a person with known physical characteristics would be photographed from the same wall-mounted cameras which photographed the bank robbers during the commission of the crimes. From these experiments the defense claimed that it could determine the physical dimensions of the robbers and eliminate Armstrong as a suspect.

The district court granted the Government's motion to quash the subpoenas, apparently ruling that it lacked authority under the Federal Rules of Criminal Procedure to permit entry on land not in the possession or control of the Government.

We need not decide whether the Federal Rules or the inherent power of the district court to promote the proper administration of criminal justice permit a criminal defendant to enter upon property owned by a third party to conduct inspections or experiments. Though Fed.R.Crim.P. 16(a)(1)(C) provides for the inspection and photographing of buildings or places which are within the possession, custody or control of the Government, there are no comparable provisions allowing inspection of the property of third parties. We have noted, however, that "the rules themselves do not purport to set outer limits of the power of the court." *United States v. Richter*, 488 F.2d 170, 173 (9th Cir. 1973). Relying on Fed.R.Crim.P. 57(b),[2] we have held that a district court has

---

2. Fed. R. Crim. P. 57(b) provides:
 If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute.

authority to compel the Government to produce the names of its witnesses even though there is no such authority specified in the Federal Rules. *See United States v. Richter, supra; see also United States v. Jackson*, 508 F.2d 1001 (7th Cir. 1975) (witness lists); *Hughes v. United States*, 377 F.2d 515 (9th Cir. 1967) (inspection of third party premises by jury in discretion of trial court); 3 C. Wright, Federal Practice & Procedure § 902 (1969). We think that an order granting inspection might properly have been based on rule 57(b) and the inherent power of the court.

■ We need not decide the point, however; for even assuming that denial of the request to enter the banks to conduct experiments was error, we believe that on these facts it was harmless. Appellant has cited no authority to us where a court has admitted evidence of photogrammetry experiments of the type sought to be admitted here. The speculative nature of these experiments, the difficulty in determining the precise location and position of the subject in the photographs taken during the robbery, and the wide discretion of the trial court in ruling on the admissibility of such experimental evidence militate against a finding of prejudicial error. *See United States v. Glover*, 596 F.2d 857 (9th Cir.), *cert. denied*, 444 U.S. 857, 100 S.Ct. 117, 62 L.Ed.2d 76 (1979); *United States v. Radlick*, 581 F.2d 225 (9th Cir. 1978); *United States v. Benveniste*, 564 F.2d 335 (9th Cir. 1977); *United States v. Flores*, 540 F.2d 432 (9th Cir. 1976).

*Grand Jury Challenge*

The defense moved before trial to set aside the indictment because of alleged disparities in the representation of a minority race on the grand jury. The appellant is black and alleged underrepresentation of blacks on the grand jury. To prove the allegations, the defense moved for an order which would allow it to inspect the affidavits of potential grand jurors in the pool from which they were drawn. The defense did not ask at this time to inspect each of the nearly 2000 affidavits in the master wheel.

Of the seventy-three persons in the grand jury pool whose race or ethnic group could be ascertained, four were Asian-American, four to six were Spanish surnamed, and one was black. To show a substantial deviation in the representation of blacks, the defense offered census figures which indicated that the percentage of black persons in the district was 4.2 percent. The defense did not allege below, and does not claim on appeal, that there had been systematic exclusion of blacks from the grand jury; rather, it bases its appeal on the grounds that there was a substantial deviation in the representation of blacks on the grand jury and that the district court erred in refusing to appoint an expert statistician to analyze the master wheel after the disparity was shown in the grand jury panel.

■ A litigant has essentially an unqualified right to inspect jury lists when necessary for the preparation or presentation of a motion under 28 U.S.C. § 1867(a)–(c). *Test v. United States*, 420 U.S. 28, 95 S.Ct. 749, 43 L.Ed.2d 786 (1975) (per curiam); *Government of Canal Zone v. Davis*, 592 F.2d 887, 889 (5th Cir. 1979); *United States v. Test*, 550 F.2d 577, 581 (10th Cir. 1976); *Guam v. Palomo*, 511 F.2d 255 (9th Cir. 1975). The right "to inspect, produce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion" granted in section 1867(f) extends not only to the grand jury panel, but also to the master wheel. *Test, supra.*

■ Here, the defense limited its initial request for inspection to the grand jury panel. The proportion of blacks on the panel was found to be 1.369 percent compared to 4.2 percent blacks in the Eastern District of California. Though the defense argued that blacks were underrepresented by 65.2 percent on the panel, the district court correctly concluded that reliance on percentages may produce disproportionately high figures which distort the actual effect of the deviation. *United States v. Potter*, 552 F.2d 901, 906 (9th Cir. 1977). To avoid

this exaggeration, this circuit has adopted a test for substantiality which looks to the absolute numerical composition of the grand jury. *United States v. Kleifgen*, 557 F.2d 1293, 1297 (9th Cir. 1977).

Accepting as correct the statistics of the defense, blacks were underrepresented on the grand jury panel in absolute terms by 2.83 percent. A grand jury drawn from this panel would on the average underrepresent blacks by less than one juror. The district court correctly concluded that this was not substantial underrepresentation under the standard set forth by our cases. *United States v. Kleifgen, supra; United States v. Potter, supra.*

██ We also find no error in the district court's refusal to appoint an expert statistician under 18 U.S.C. 3006A(e)(1) to analyze the data in the master wheel. As we have recently reiterated, the Criminal Justice Act requires a district court to authorize defense services for an indigent defendant "in circumstances in which a reasonable attorney would engage such services for a client having the independent financial means to pay for them." *United States v. Sims*, 617 F.2d 1371, 1375 (9th Cir. 1980) (*quoting United States v. Bass*, 477 F.2d 723, 725 (9th Cir. 1973)). We think that a reasonable attorney, after determining that there was no substantial disparity in the representation of blacks on the grand jury panel, would not decide, necessarily, to incur the additional expense of retaining an expert statistician to analyze the master wheel.

The convictions on counts I and III are AFFIRMED; the conviction on count II is REVERSED.