UNITED STATES of America,
Plaintiff–Appellee,

v.

John Edward SPENCER,
Defendant–Appellant.

No. 91–10051.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1991.

Decided Dec. 16, 1992.

As Amended on Denial of Rehearing
and Rehearing En Banc July 7, 1993.

Bram L. Jacobson, Asst. Federal Public Defender, Phoenix, AZ, for defendant-appellant.

Ann E. Birmingham, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellee.

Before: POOLE, REINHARDT and FERNANDEZ, Circuit Judges.

## ORDER

The opinion filed December 16, 1992, slip op. 14547, and appearing at 981 F.2d 1083 (9th Cir.1992) is amended as follows:

[Editor's Note: Amendments have been incorporated into published opinion.]

With these amendments, the panel has voted unanimously to deny the petition for rehearing.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed.R.App.P. 35.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

## OPINION

POOLE, Circuit Judge:

John Edward Spencer appeals his conviction for being a convicted felon in possession of a firearm. Spencer argues that the district court (1) erroneously denied him the opportunity to present evidence that another individual who owned the vehicle at issue in this case was found with a gun under the driver seat of another vehicle several days after Spencer's arrest; (2) should have suppressed evidence obtained when the police stopped the car in which Spencer was a passenger and frisked him; and (3) improperly commented on the evidence presented at trial. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We affirm.

## FACTS

On April 6, 1990, at approximately 1:00 A.M., Phoenix police officer Willie Collins stopped a motor vehicle operating without functioning headlights. Defendant Spencer was a passenger in the front seat of the car. When Officer Collins asked the driver for her license, the driver informed Officer Collins that she did not have one and that the car did not belong to her. She informed Officer Collins that the car belonged to an acquaintance named Jim Miller.

At about the same time, Officer Fred Lozier, pulling alongside the stopped vehicle, observed the defendant bend forward in his seat. Upon Officer Collins's request for identification, Spencer presented a Maricopa County jail identification card. After Officer

Lozier informed Officer Collins of what he had seen, Officer Collins took Spencer's identification card and retreated to her patrol car to run a computer check on the defendant and on the car's license plate. The computer inquiry revealed that the defendant had previously been convicted of assault with a deadly weapon and that the license plate was not registered to the stopped vehicle. The computer did not reveal any outstanding warrants against Spencer.

Officer Sprouse then arrived on the scene and informed Officer Collins that he had seen the same vehicle the night before being driven by a different person and adorned with a different license plate. After a short discussion, the three officers approached the vehicle and asked the driver and Spencer to step outside. After Spencer exited the vehicle, Officer Lozier noticed that he was wearing a leather jacket and then patted Spencer down. The officer slid his hands underneath Spencer's jacket and discovered an empty shoulder holster. Officer Lozier asked Spencer where the gun was and Spencer replied that he did not have one and was not permitted to carry one.

Officer Collins then searched the front passenger area of the car. She found underneath the passenger side seat a fully loaded .44 caliber Sturm Ruger revolver. After checking to see if the gun fit inside the holster worn by the defendant, the officers arrested Spencer on charges of carrying a concealed weapon. The police later determined that the car in fact belonged to Miller, who was arrested five days after Spencer on charges of automobile theft. At the time of his arrest the police found a handgun under the driver side seat of the car in which Miller had been traveling.

At trial, the district court refused to allow Spencer to introduce evidence of Miller's arrest and of the gun found in the car Miller had been driving. The court did, however, allow the woman driver of the car in which Spencer had been a passenger to testify that Miller's gun had been found by the police when they arrested him, and admitted evidence tending to show that the holster was not large enough to fit the Ruger found underneath Spencer's car seat.

During closing arguments, Spencer's attorney asserted that Miller owned a gun similar to the one found in the car the night Spencer was arrested. The district court sustained the prosecutor's objection on the ground that defense counsel was arguing facts not in evidence, but did not ask the jury to disregard the comment. The district judge stated: "I think that is correct. I don't recall that testimony. But again the jury has heard the evidence. Let's proceed." Spencer's attorney did not object to the judge's response to the prosecutor's objection. Spencer was convicted of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2), which prohibit convicted felons from being in possession of a firearm, and was sentenced to twenty-one months in federal prison. Spencer filed a timely notice of appeal on January 15, 1991.

## DISCUSSION

### A. Suppression of evidence of Miller's gun

■ Spencer contends that the trial judge should have admitted police officers' testimony and police reports detailing Miller's arrest and the seizure of a gun from the car that Miller was driving. Fed.R.Evid. 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We review the district court's evidentiary decision under Rule 403 for an abuse of discretion. *United States v. Hooton*, 662 F.2d 628, 636 (9th Cir.), *cert. denied*, 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed.2d 873 (1981). We give the district courts "wide latitude" when they balance the prejudicial effect of proffered evidence against its probative value. *United States v. Kinslow*, 860 F.2d 963, 968 (9th Cir.1988). *See also United States v. Layton*, 855 F.2d 1388, 1402 (9th Cir.1988) ("considerable deference" given Rule 403 evidentiary decision), *cert. denied*, 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989).

■ Spencer disputes the district court's reliance upon Rule 403 as a basis for excluding the arrest report made in Miller's case, and the corroborating testimony of the police officers. Spencer's argument is not persuasive. He cites several mistaken identity cases involving the exclusion of testimony describing the identity of a suspect in a crime. *See United States v. Armstrong*, 621 F.2d 951, 953 (9th Cir.1980); *United States v. Moore*, 556 F.2d 479, 485 (10th Cir.1977); *United States v. Robinson*, 544 F.2d 110, 112–13 (2d Cir.1976) *cert. denied*, 434 U.S. 1050, 98 S.Ct. 901, 54 L.Ed.2d 803 (1978); *Holt v. United States*, 342 F.2d 163, 164–65 (5th Cir.1965).

We do not find these cases dispositive. In *Armstrong*, the sole Ninth Circuit case cited by Spencer, we held that the defendant was prejudiced by the trial judge's exclusion of testimony that a man other than the defendant had used "bait money" stolen during the bank robbery of which the defendant was accused. However, we also explained that this ruling cast no doubt on a district court's freedom to "exclude cumulative evidence and to insure orderly presentation of a case." 621 F.2d at 953.

Spencer futilely contends that Fed.R.Evid. 404(b) and 405(b) dictate that the evidence of Miller's arrest be admitted. Rule 405(b) allows introduction of specific prior instances of conduct when that conduct is probative of character or a trait of character *and* the defendant's character, or a character trait, is an essential element of his defense. Here Spencer has not raised character as an element of his defense; he claims that he did not know that the gun was under the seat.

Rule 404(b), on the other hand, actually establishes an independent basis for the court's exclusion of Spencer's evidence. Spencer correctly argues that he, as well as the government, may invoke the provisions of Rule 404(b). *See United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir.1991); *United States v. McCourt*, 925 F.2d 1229, 1230–36 (9th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 121, 116 L.Ed.2d 89 (1991). Rule 404(b), however, is not an independent basis for admitting otherwise inadmissible evidence. Even evidence not barred under Rule 404(b) must still survive scrutiny under other Rules. *E.g., Perkins*, 937 F.2d at 1401 (evidence was excludable under Rule 403

whether or not it was admissible under Rule 404(b)).

In any event, Spencer's evidence does not qualify for admission under Rule 404(b). Spencer argues that Miller's "bad act"—hiding a gun under his car seat—established the identity of the person who hid the gun under Spencer's seat: Miller. Spencer thus argues that the evidence qualified for admission under 404(b) on "identity" grounds. We have held, however, that "[i]f the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of identity can arise." *Perkins,* 937 F.2d at 1400 (internal quotation marks omitted). That is exactly the situation here. Hiding a gun under a car seat is not a distinctive crime, and cannot be used to satisfy the "identity" exception to Rule 404(b).[1]

We find no abuse of discretion in declining to admit the evidence of the arrest reports. We have previously held that Fed.R.Evid. 403 supports an evidentiary decision quite similar to this one.[2] *See Hooton,* 662 F.2d at 636 (affirming exclusion of testimony about the level of gun trading typically engaged in by hobbyist collectors where defendant charged with dealing in firearms without a license).

B. *The vehicle stop and the subsequent frisk and automobile search*

Spencer next argues that the police had no cause to stop the vehicle in which he was a passenger, unlawfully seized him by forcing him to remain while the officer took his identification card back to the police car for a computer check, and improperly subjected him to a "stop and frisk." We review de novo the district court's ruling on a motion to suppress evidence on these grounds. *People of the Territory of Guam v. Ichiyasu,* 838 F.2d 353, 355 (9th Cir.1988). None of Spencer's objections to the stop or to the subsequent warrant check and frisk are meritorious.

■ There is no doubt that a broken headlight gives an officer cause to stop a motorist. *See Delaware v. Prowse,* 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979); *United States v. Baker,* 850 F.2d 1365, 1368 (9th Cir.1988). The detention while running a warrant check also was reasonable. To be justified, such a detention must be supported by a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417–418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). "A valid stop can include the momentary restriction on a person's freedom of movement in order to maintain the status quo while making an initial inquiry." *United States v. Patterson,* 648 F.2d 625, 633 (9th Cir.1981).

■ These criteria were met in this case. The driver had no operator's license and Spencer presented a jail identification when the officer asked him to identify himself. These facts could reasonably lead a police

---

1. Nor would this evidence qualify under Fed. R.Evid. 406, involving "habit or routine practice," since proof of those attributes were not the basis of the offers.

2. Our dissenting colleague accuses us of condoning the exclusion of relevant evidence and of tolerating a standard that allows prosecutors "inordinate leeway" to introduce evidence harmful to the defendant while preventing defendants from presenting evidence tending to establish innocence. Judge Reinhardt confuses arguments with facts, for we do no such thing. The key issue in this case is whether Spencer knew that the Ruger was under the seat. The outcome of the case does not necessarily turn on the question who *owned* the Ruger. A jury would draw inferences about the presence of the Ruger in light of the police officers' observation of Spencer's furtive motions in the car. The district court simply concluded that the risk of confusing the issues and wasting time outweighed the likely value of any inferences that could conceivably be drawn from the subsequent discovery of a different gun under a different seat in a different car (albeit a car owned by the same person who owned the car in which Spencer was a passenger).

As to the dissent's objection that we have deprived Spencer of his constitutional right to present exculpatory evidence, we think it clear that Fed.R.Evid. 403 presents no constitutional problems. The balancing procedure it requires is ordinarily thought to meet the demands of due process. Judge Reinhardt's assertion that Spencer's constitutional rights were violated by its application reminds us of the defense lawyer's aphorism that "due process is what my client was denied."

officer to suspect that the car did not belong to the driver and that the occupants might have been involved in criminal activities. *See United States v. Fouche,* 776 F.2d 1398, 1403 (9th Cir.1985) (inferences or deductions apparent to trained law enforcement officers may be considered under the totality of the circumstances). The police were also justified in believing that a firearm might be in the vehicle after they discovered the shoulder holster underneath Spencer's jacket and Officer Lozier observed Spencer's concealing movements in the automobile's front seat after Officer Collins stopped the vehicle. Thus, the warrantless search of the stopped car was supported by probable cause. *See, e.g., Baker,* 850 F.2d at 1369 (police could search auto after finding ammunition on the defendant's person).

### C. *The district judge's comment to the jury*

■ The prosecutor objected that Spencer's lawyer was outside the evidence during his closing argument. The district judge responded that he did not recall the evidence to which defense counsel had referred. Defense counsel did not object to the court's statement; hence, we review it only for plain error. *United States v. Sanchez–Lopez,* 879 F.2d 541, 551 (9th Cir.1989). "Plain error exists only in exceptional circumstances when a substantial right of a defendant is affected." *Id.* (citing *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)).

Judicial comments on the evidence are permissible. *Sanchez–Lopez,* 879 F.2d at 553 (citing *Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 698–99, 77 L.Ed. 1321 (1933)). Here, the district judge's comments were entirely neutral. He simply stated that he did not recall the testimony about Miller's gun referred to by Spencer's counsel. Such a statement does not support a finding of plain error. In any event, the district judge also instructed the jury to decide the case based on the evidence as each of them re-

membered it. This instruction, which indicated to the jurors that they are the sole judges of the facts, negated any adverse impact the mild comment may have had. *See Sanchez–Lopez,* 879 F.2d at 553.

### CONCLUSION

We AFFIRM Spencer's conviction.

REINHARDT, Circuit Judge, dissenting:

#### I

I strongly disagree with the majority's holding that evidence critical to Spencer's defense was properly excluded. To justify its decision the majority cites the district court's statement that admitting the disputed evidence might have "wasted time" and "confused the jury". *See* Opinion at 745 n. 1. Such conclusory statements are all-too-frequently a substitute for a failure to analyze the underlying facts or legal issues. That is without question the case here. The majority does not attempt to explain the basis for either of the conclusions it endorses; nor could it. At most, approximately one to two minutes would have been "wasted" by the introduction of the excluded police report— evidence that strongly supported Spencer's defense and that was uniquely persuasive.[1] The only "confusion" that could have been engendered by consideration of the police report would have been the juror's *justifiable* uncertainty regarding Spencer's guilt or innocence. True, the trial would have taken much less time—and jury deliberations would have been substantially simplified—if the trial judge had simply excluded *any* evidence that tended to support the conclusion that the defendant was innocent. However efficient such a system of justice might be, it is neither the system we presently have nor one that we should be anxious to establish. I cannot join the majority's decision.

---

1. The majority has amended its opinion to include an offer of testimony of police officers instead of just their report. The testimony would undoubtedly have been simple and straightforward; it would increase my estimate of one to two minutes only slightly. Accordingly, the ma-

jority's modification does not in any way affect my analysis or the result I reach. The fact remains that to characterize the disputed evidence as a waste of time is to ignore its vital importance to Spencer's defense.

## II

The firearm that Spencer was charged with possessing was found under the passenger seat of a car that was owned by Jim Miller and driven by Miller's girlfriend. Spencer, who had entered Miller's car earlier that evening, was sitting in the passenger seat when the police stopped the vehicle. He contended that he did not know that a gun was under the seat and that Miller must have left it there sometime previously. Officer Sprouse stated that he had seen Miller's car driven the previous evening and that the driver was someone other than Miller's girlfriend or Spencer. Five days after Spencer's arrest, the police found Miller with a gun similar to the one found when Spencer was arrested. The gun, like the gun in Spencer's case, was located under the seat of one of Miller's cars. The police had observed Miller at his house for several hours prior to the discovery of the gun: during that period, he did not carry a gun out to his car nor did he appear to put one under the seat. In short, according to the police report, Miller—the owner of the car in which Spencer was arrested—kept at least one of his guns under the seat of his car.

The trial judge prevented Spencer from introducing the police report into evidence and thus excluded critical facts tending to show that the gun under the seat of Miller's car was Miller's not Spencer's. He precluded Spencer from informing the jurors about the evidence showing that Miller kept guns under the seats of his cars during the general time period in which the charged offense occurred. True, the jurors were told by the woman with Spencer when the police stopped them that Miller owned the car in which Spencer was a passenger and that Miller owned a gun. *See* Opinion at 744. However, that information is *infinitely* less probative of Spencer's innocence than the evidence excluded by the trial judge: evidence that demonstrated that Miller kept guns *precisely where the gun Spencer was charged with possessing was located;* evidence that was contained in an official police report rather than in the testimony of a woman companion of the defendant; evidence that tended

strongly to prove that the gun was Miller's not Spencer's. The fact that the jury knew that Miller owned both a gun and the car was virtually valueless to Spencer's defense without the ability to inform the jurors of the critical fact that Miller kept guns *underneath the seat of his cars;* deprived of that information, the jury had little reason to believe that the gun that Spencer was charged with possessing was placed there by Miller and that Spencer did not know of its existence. The majority denigrates the probativeness of this evidence by saying that the issue was possession of the gun not ownership. Opinion at 745 n. 1. It hardly needs stating that whether a gun found under the seat of Miller's car was Miller's or Spencer's is highly relevant to whether Spencer was aware of its existence, let alone whether he was in possession of the gun, when he sat on the passenger seat beneath which it was hidden.

## III

Fed.R.Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The evidence excluded by the trial judge was unquestionably relevant. Indeed, that evidence was the *key* to Spencer's defense. Fed.R.Evid. 402 states that "[a]ll relevant evidence is admissible": moreover, because that relevant evidence was crucial to Spencer's defense, he not only has a statutory entitlement (under Rules 402 and 401) to introduce it, but a *fundamental constitutional right* to do so as well. *See Washington v. State of Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967) ("The right to offer the testimony of witnesses ... is in plain terms the right to present a defense, the right to present the defendant's version of the facts .... Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.").[2] In

2. Unlike my colleagues, *see* Opinion at 745 n. 1, I believe that the statement of the Supreme Court

short, a heavy statutory and constitutional presumption favors the introduction of relevant evidence—like the evidence excluded here—that might support a claim of innocence in a criminal trial. *See also Perry*, 520 F.Supp. at 556 ("[T]he federal cases indicate that the discretion of the trial judge may not be exercised as broadly as in the California courts in excluding evidence that a third party committed the crime charged, and there appears to be a definite preference for the admission of such evidence.").

Fed.R.Evid. 403 constitutes a limited exception to Rules 401 and 402: it permits the exclusion of relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403 *in no way* supports the district court's action here: *none* of the considerations identified by that Rule applies in the present case, much less *"substantially outweigh[s]"* the probative value of the relevant evidence sought to be introduced.

## IV

As I have noted, my colleagues identify, without a single word of discussion or analysis, two concerns underlying the district court's decision to exclude the police report: "confusing the issues and wasting time". Opinion at 745, n. 1. Neither is by any stretch of the imagination even remotely applicable here; nor does the majority attempt to offer any explanation why they are. There is no indication whatsoever in the record that evidence relating to Miller and his habits would have prejudiced, confused, or

misled the jury—unless we presume that Spencer is guilty and that he therefore should not be allowed to confuse the jury by introducing evidence tending to show that he did not commit the offense. Contrary to the majority's assertion, the excluded evidence would have *enhanced* the jury's ability to evaluate the credibility of Spencer's claim. Moreover, the excluded evidence was hardly needlessly cumulative or a "waste of time": it was powerful evidence of Spencer's innocence—evidence of a type *qualitatively different* from the other evidence offered in support of his *sole* defense to the crime with which he was charged, and it would have consumed approximately two or three minutes of the district court's time. The cases cited by the majority to support the inference that the excluded evidence was merely "cumulative" lend no support to its conclusion here. *Compare* Opinion at 744–45 (citing *United States v. Armstrong*, 621 F.2d 951 (9th Cir.1980) *with Armstrong*, 621 F.2d at 953 (*reversing* conviction due to exclusion of relevant evidence); Opinion at 745 (arguing that *United States v. Hooton*, 662 F.2d 628 (1981), *cert. denied*, 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed.2d 873 (1982), upheld "an evidentiary decision quite similar to this one") *with Hooton*, 662 F.2d at 636 ("Hooton attempted to offer the ... testimony of gun collectors, of gun dealers who cater to hobbyists.... The trial court excluded the evidence.... However, defense counsel did elicit *extensive* testimony from approximately *twenty* prosecution and defense witnesses concerning the activities of gun collectors.") (emphases added).[3] Put simply, there is no basis *whatsoever* for the majority's conclusion that Rule 403 authorizes the district

---

in *Washington* is hardly analogous to a view that "due process is what[ever a defendant] is denied". Although I cannot vouch for the majority, I (along with the seven Justices who joined the Chief Justice's opinion in *Washington*) consider the Supreme Court's explanation of the requirements of the Due Process Clause to be far more persuasive than any aphorism. *See also Chambers v. Mississippi*, 410 U.S. 284, 298–303, 93 S.Ct. 1038, 1047–50, 35 L.Ed.2d 297 (1973) (reversing conviction because due process violated by the state's refusal to admit evidence that a third party confessed to the crime); *Perry v. Watts*, 520 F.Supp. 550, 558–559 (N.D.Cal.1981), aff'd sub nom., 713 F.2d 1447 (9th Cir.1983),

*cert. denied*, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (noting significant constitutional limitations on the exclusion of evidence that a third party committed the offense for which the defendant was charged). In fact, if any aphorism is involved in this case it would be the majority's apparent view that "due process is whatever a district judge decides it is in the exercise of his unlimited and unreviewable discretion."

3. In its amended opinion, the majority now acknowledges that *Armstrong* does not support the inference that the excluded evidence was merely cumulative. *See* Opinion at 744–45.

court's action here: *none* of the prerequisites to application of that Rule in *any way* exists in the present case.

## V

Spencer is entitled to introduce evidence that supports his contention that *someone else* possessed the handgun at issue here just as the defendant in *United States v. Robinson*, 544 F.2d 110 (2nd Cir.1976), was entitled to introduce evidence to support his contention that *someone else* robbed the bank in that case. *See id.* at 112–13 (reversing a trial court's exclusion of evidence under Rule 403 that an individual who looked like the defendant was suspected of two armed robberies in the same area within six days of the bank robbery for which the defendant was charged).

For purposes of the Federal Rules of Evidence and the Constitution, the "mistaken identity" cases cited by the majority, *see* Opinion at 744–45, are identical to the "mistaken ownership" or "mistaken possessor" situation presented here, and the majority offers no rationale for making a distinction between the two.[4] "Fundamental Standards of Relevancy ... require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged." *United States v. Armstrong*, 621 F.2d 951, 953 (9th Cir.1980) (citing numerous cases and reversing conviction for bank robbery because the district court excluded evidence that another person possessed bait bills from the bank).

To be precise, Spencer's contention is that he did not have knowledge that the gun was hidden beneath the seat of the car in which he was a passenger, and he therefore did not have possession of the weapon. He tried to show that in fact the gun was in someone else's possession—the owner of the vehicle who had placed the weapon where it was found. Sitting in someone else's car in which, unbeknownst to one, the owner has

hidden a gun or other contraband does not make a person guilty of possession. Under those circumstances, the owner, not the innocent occupant of the car, is the possessor. Thus, the majority's argument that Spencer's defense is not that someone else is guilty of being the possessor is simply wrong. Spencer is saying: "The state has accused the wrong person."

The cases that the majority dismisses as "mistaken identity" cases *are* clearly applicable here. It makes no difference whether the third party "looks like" the defendant ("mistaken identity") or not: if the defendant's evidence supports the fact that another person—not he—was responsible for the crime or otherwise establishes the defendant's innocence, that evidence is relevant and must be admitted in all but extreme situations. *See also Chambers*, 410 U.S. at 298–303, 93 S.Ct. at 1047 (holding that exclusion of hearsay evidence that a third party told others that he shot the victim was a violation of due process despite the fact that the third party was never "mistaken" for the defendant); *Alexander v. United States*, 138 U.S. 353, 356, 11 S.Ct. 350, 351, 34 L.Ed. 954 (1891) (noting that the exclusion of the defendant's testimony that another person was armed and searching for the eventual murder victim might be "such error ... as to require reversal" if such evidence "might have a material bearing upon the identification of the murderer"). Spencer was accused of possessing a firearm: our precedent makes clear that he was entitled to present evidence that someone else—not he—possessed that weapon.

The evidence that Spencer wished to introduce was relevant and *crucial* to his *sole* defense to the crime with which he was charged. "[W]here the proffered evidence is of substantial probative value, and will not tend to prejudice or confuse, all doubt should be resolved in favor of admissibility." *Holt*

---

4. Agreeing with my original dissent, the majority no longer argues that the "mistaken identity" cases do not apply to the type of circumstances involved here. Instead, it now finds those cases "not dispositive" on the implied ground that the district court was free to exclude cumulative evidence. Opinion at 744–45. As my dissent makes clear, the disputed evidence was far from cumulative, and it was crucial to Spencer's defense. I adhere to my view that the "mistaken identity" cases cited by Spencer, and rejected by the majority in its amended opinion as "not dispositive," strongly support his argument that the district court erred in excluding the evidence.

**750**

*v. United States,* 342 F.2d 163, 166 (5th Cir.1965). Here, as I have noted *supra,* the district court's refusal to admit the evidence Spencer sought to introduce was not only improper under the Federal Rules, but also may well have deprived Spencer of his fundamental constitutional right to due process of law. *Compare with Hooton,* 662 F.2d at 636 (excluding evidence under Rule 403(b) in part because "the excluded evidence was marginally relevant" to Hooton's defense).

## VI

Perhaps unintentionally, my colleagues expand or hasten the creation of an increasingly common double-standard in criminal cases—a standard that allows prosecutors inordinate leeway with respect to the introduction of evidence harmful to the defendant while precluding defendants from introducing evidence that would tend to establish their innocence. I have little doubt that if Spencer had been found with a gun under the seat of another of *his* cars around the time he was arrested for the present offense, my colleagues would not hesitate to reverse a district court's suppression of such evidence. *See, e.g., United States v. Butcher,* 926 F.2d 811, 815–16 (9th Cir.1991) (holding that, in the prosecution of a defendant for possessing a firearm located in his car, evidence that the defendant's home contained two weapons and narcotics was admissible to prove offense); *United States v. Brown,* 770 F.2d 768, 770–71 (9th Cir.1985) (holding that evidence that a gun was found under the seat of the defendant's car was admissible to prove a conspiracy to import heroin); *see also United States v. Covelli,* 738 F.2d 847, 855–56 (7th Cir.1984) (permitting the introduction—over a Rule 403 objection—of the defendant's past possession of two handguns in a murder prose-

cution despite that lack of any evidence that either of these guns was the murder weapon); *United States v. Moore,* 556 F.2d 479, 485 (10th Cir.1977) (permitting the introduction of evidence that explosive materials were found in the defendant's residence both before and after a bomb was placed at a courthouse in a prosecution for that latter act). Despite the *government's* ability to introduce "similar acts" to prove that the defendant (and not some other person) committed an offense, my colleagues today refuse to permit a *defendant* to introduce "similar acts" to prove that another person (and not the defendant) committed the act—here, possession of a handgun—with which the defendant is charged. Such a rule is, in my view, as well as that of several other circuits, clearly improper.[5]

### Conclusion

District judges have discretion to make rulings regarding the admissibility of evidence. However, it is the duty of appellate courts to ensure that those rulings do not deprive defendants of their right to a full and fair defense. Today, despite the clear commands of the Federal Rules of Evidence and the Constitution, we fail in that duty. Spencer's conviction should be reversed and remanded.[6] Accordingly, I dissent.

### Epilogue

In its amended opinion, the majority has abandoned much of the analysis on which it purportedly based its original decision. What it retains principally is its erroneous conclusion that the district court acted within its discretion in refusing to permit Spencer to introduce evidence uniquely probative of his innocence and highly material to his de-

---

**5.** Because I believe that the Constitution and Rules 401 and 402 require the admission of the evidence Spencer sought to introduce, I need not reach Spencer's alternate argument that Fed. R.Evid. 404(b) mandates that same result. *Cf.* Opinion at 744–45 (rejecting that claim). The majority has now abandoned its original position that a defendant may not raise a "reverse 404(b)" argument, implicitly acknowledging that the dissent is correct on this point. *See United States v. Stevens,* 935 F.2d 1380, 1400–06 (3rd Cir.1991) (reversing conviction on that basis and noting that numerous other state and federal

circuits have adopted the "reverse 404(b)" theory).

**6.** I believe that the majority's treatment of both the search and seizure issue and the comments regarding the evidence made by the district judge also may be erroneous; moreover, in the latter case, the court's action serves to compound the error that constitutes the basis for this dissent. However, because I would reverse on the exclusion of evidence issue, I need not reach these alternative grounds.

fense. That conclusion is announced as a holding despite the absence of any discussion or explanation as to *why* the evidence—the *only* independent and objective evidence favorable to Spencer on the central issue in the case—would have been confusing or have wasted time. That the majority's conclusion is incorrect is bad enough. That it constitutes both an abdication of its authority to review a critical ruling of the district court and a wholly unreasoned endorsement of the lower court's action is far worse. The district court's ruling deprived the defendant of a fair trial. The majority's decision, in both its original and amended form, simply rubber-stamps that wrongful action. Any defendant is entitled to more from the judicial system.