UNITED STATES of America, Plaintiff–Appellee,

v.

Phillip CROSBY, Defendant–Appellant.

No. 94–10556.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 16, 1995.

Decided Jan. 30, 1996.

As Amended on Denial of Rehearing April 2, 1996.

Michael D. Gordon, Assistant Federal Public Defender, Phoenix, Arizona, for defendant-appellant.

Stanley L. Patchell, Assistant United States Attorney, Phoenix, Arizona, for plaintiff-appellee.

Before: SNEED, KOZINSKI and JOHN T. NOONAN, Jr., Circuit Judges.

KOZINSKI, Circuit Judge:

We plumb, once again, the turbid depths of Fed.R.Evid. 403.

## I

Phillip Crosby was convicted of assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(f).[1] There is no dispute that the victim, Dorothy Benton, was seriously injured. Less clear is who caused these injuries, largely because everyone known to be involved was in a drunken stupor at the time.

Crosby and Dorothy lived together on the Navajo reservation near the town of Leupp, Arizona. On the afternoon of February 26, 1994, they and their friend, Donald Dale, drove to the town of Winslow, Arizona, and bought a convenient 18-pack of beer. They then stopped at a nearby creek and drank it. On their way home, they bought more beer. The three of them continued drinking at Crosby's house until approximately 6:30 or 7:00 in the evening, when Dale went home. Dale testified that Crosby and Dorothy had gotten along well that day; in fact, he had seen them holding hands and kissing at the creek.

The witnesses' memories get blurry at this point. Dorothy testified that she and Crosby were drunk that evening.[2] Crosby told Jesse Delmar, an investigator for the Navajo Department of Law Enforcement, that he could only remember bits and pieces of what happened that night. He did recall that, at one point, Dorothy was bleeding and that he

---

1. That offense is now codified at 18 U.S.C. § 113(a)(6).

2. Crosby and Dorothy apparently started drinking on Tuesday; when Dale left it was Saturday evening.

went outside to get water for her.[3] When he returned to the house, the door was locked and no one was inside. He wandered around and eventually found Dorothy by the highway. The next thing he remembered was trying to carry her back but, because she was too heavy, he had to use a wheelbarrow. Upon waking up the next morning, Crosby went to get help. Dorothy was taken to the Winslow Memorial Hospital Emergency Room.

While at the hospital, Dorothy told a nurse and a police officer that she had been assaulted by her boyfriend, apparently referring to Crosby. The nurse, however, noted that Dorothy couldn't stand up by herself, was "not answering all questions appropriately" and admitted to drinking at least a 12–pack of beer the night before. Subsequently, Dorothy told a defense investigator, once on June 9 and again on July 13, 1994, that she couldn't remember who hit her. She said the same thing to the prosecutor on August 2. However, on the first day of trial, August 9, Delmar spoke with Dorothy alone and, during that conversation, she remembered that Crosby had hit her on the night of the assault. The next day, however, Dorothy again told the defense investigator that she couldn't remember who had hit her.

At trial, Dorothy admitted she had been having memory problems and that she could remember little from the night of the assault. She did recall, however, getting into an argument with Crosby and that he punched her once in the face with his fist. The next thing she remembered was waking up in the hospital. Dorothy couldn't recall how else she had received her numerous injuries.[4]

## II

Crosby brought a motion in limine asking the district court to allow him to introduce certain evidence relating to Dorothy's husband, Hoskie Benton. At the time of the assault, Dorothy lived with Crosby but was still married to Hoskie. The defense sought to prove the following:

1. Hoskie resided in Birdsprings, Arizona, five miles from the place where Dorothy was assaulted.

2. Approximately nine months before the assault, Hoskie had pled guilty to brutally assaulting Crosby, causing him to spend three days in the hospital. Hoskie was apparently jealous because Crosby was dating Dorothy.

3. Dale, who was Dorothy's neighbor when she lived with Hoskie, had seen Hoskie beat Dorothy on at least three occasions, had once seen Hoskie chase Dorothy with an axe and had seen her wear sunglasses to hide blackened eyes caused by Hoskie's beatings.

4. Dorothy had reported that Hoskie beat her three or four times a month when they lived together, including once after he beat up Crosby.

5. Hoskie was not out of town and was thus in the general area at the time of the assault. The district court denied the motion and Crosby appeals.

Generally, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant and therefore admissible. Fed.R.Evid. 401 & 402. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. While the district judge didn't mention Rule 403, he held that the defense's evidence would "confuse the jury, mislead them, and delay the proceedings." RT 228. We infer that he excluded the Hoskie evidence under Rule 403.

■ We review the admission or exclusion of evidence under Rule 403 for abuse of discretion. *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir.1992). In reviewing

---

**3.** Crosby didn't testify at trial; Delmar recounted what Crosby told him several days after the assault.

**4.** The nurse at the hospital found bruises all over Dorothy's extremities and several lacerations on her skull. There was also blood in her urine, indicating some internal injury.

that discretion, we must weigh the evidence's probative value against any risks and delays attendant to its admission.

## A. Probative Value

■ We start with the observation that "[f]undamental standards of relevancy ... require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged." *United States v. Armstrong*, 621 F.2d 951, 953 (9th Cir.1980); *see also United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir.1991) ("A defendant is entitled to introduce evidence which tends to prove someone else committed the crime."); *United States v. Brannon*, 616 F.2d 413, 418 (9th Cir.1980) ("A defendant is entitled to prove his innocence by showing that someone else committed the crime."). The excluded evidence here was exactly of that type: It showed that someone other than Crosby had the opportunity, ability and motive to commit the crime. Hoskie lived a mere five miles from where the assault occurred and was in the general area at the time. His prior beatings of Crosby and Dorothy showed that he possessed the requisite strength and emotional instability. Most importantly, the excluded evidence showed that Hoskie was angry at his wife for having an intimate relationship with Crosby, and that this had driven him to violence in the past. In short, the excluded evidence supported an alternative theory of how the crime might have been committed.

This argument was crucial to the defense. Because the assault occurred in a remote place and Crosby was the only other person known to be at the scene of the crime, the jurors would naturally ask themselves, "If the defendant didn't beat Dorothy, who did?" Introduction of the Hoskie evidence would have answered this question, rebutting the inference that Crosby must have committed the assault because no one else was in a position to do so.

■ The Hoskie evidence was also significant because there was so little direct evidence of what actually happened. *Cf. United States v. Payne*, 805 F.2d 1062, 1066 (D.C.Cir.1986) ("In making a determination [under Rule 403], the balance in close cases is struck in favor of admission."). Dorothy tes-

tified that she could remember nothing about the night of the assault other than that Crosby had hit her once and, even as to that, she repeatedly changed her story. The only other evidence was Delmar's testimony that Crosby had shown him a spot along the highway and said, "This was probably where it happened." RT 272. But this was far from an admission of guilt. Crosby could just as likely have meant that this was probably where Dorothy had been beaten by someone else because he had found her there in an injured condition.

■ In addition to arguing that the prosecution's evidence didn't prove he had committed the crime, Crosby also claimed that the police investigation was sloppy and that a more thorough investigation would have exonerated him. The defense pointed out that the first investigators at the crime scene failed to secure the area. Nor did they take much by way of physical evidence: no photographs, fingerprints, hair or skin samples, fingernail scrapings, fabric samples, footprints or tire tracks. While they obtained a baseball bat, scrapings from the wheelbarrow and pieces of the victim's and defendant's clothing, the police did not have most of this evidence tested. The only testing done was to compare the blood type found on the evidence with that of the victim. There was no comparison with Crosby's blood type and no DNA matching.

In the end, the prosecution could only show that the blood type on a few pieces of the defendant's clothing was the same as that of the victim. However, the government's expert witness admitted that over 40% of all Native Americans have that same blood type; the blood could have come from any number of people on the Navajo reservation, including Hoskie or Crosby. But even had the prosecution proved that the blood on Crosby's clothing was Dorothy's, that would hardly have been conclusive since Crosby admitted he had found Dorothy after the assault and attempted to carry her home.

Because he was barred from introducing the Hoskie evidence, Crosby couldn't fully argue his sloppy investigation theory. While he could point out what the police hadn't

done, he could suggest no exculpatory evidence the police might have found had they conducted a more thorough investigation. The excluded evidence would have lent support to the defendant's theory that someone else beat Dorothy and undermined the prosecutor's claim that a more thorough investigation would have turned up nothing of value. Rather than being limited to poking holes in the prosecution's case, Crosby's counsel could have plausibly argued that a more thorough investigation would have produced evidence incriminating Hoskie.

■ Finally, Dorothy's testimony was probably the single most damaging piece of evidence to the defense. The prosecution had no other eyewitnesses and the rest of its case consisted of weak circumstantial proof. In response to Dorothy's testimony, the defense offered to prove that she had moved back in with Hoskie on the eve of her change of testimony. This, coupled with the excluded evidence and the fact that she had earlier said she couldn't remember who had hit her, would have provided a plausible explanation for Dorothy's desultory testimony: Hoskie had committed the crime and Dorothy was covering up for him by changing her story. Given Hoskie's past abuse of Dorothy, the jury might have inferred that she changed her story because she feared Hoskie.

### B. Potential for Confusing and Misleading the Jury or Delaying the Trial [5]

■ The excluded evidence added no new issues to the case, as it dovetailed neatly with defendant's theory that someone else had committed the crime and that he was merely the victim of a sloppy investigation. Furthermore, it could have decreased confusion by providing an explanation for Dorothy's change of testimony.

■ The Hoskie evidence also posed only a minimal risk of delay. Most of it could have been presented through Dale and Dorothy, both of whom were already testifying. It was undisputed that Hoskie lived five miles away and was in the general area at the time, so the trial would not have been delayed by disagreement on those facts. Further, whether Hoskie had been arrested for assaulting Crosby was a matter of public record and thus was easily ascertainable. While the trial might have been delayed somewhat if Hoskie had been put on the stand by the prosecution, both the Assistant United States Attorney and defense counsel conducted the trial in a crisp and highly professional manner, showing no inclination toward unnecessary delay. The trial lasted less than three days, of which testimony took less than two. There's no reason to believe that counsel would have been less concise in presenting and rebutting the Hoskie evidence. In any event, delay reasonably necessary to allow a party to present key aspects of its case can never defeat admissibility under Rule 403.

### C. Balancing Under Rule 403

The government argues that our previous opinions conclusively establish that the probative value of the Hoskie evidence was substantially outweighed by countervailing considerations. First, it contends that the Hoskie evidence was not nearly as probative as that in *United States v. Armstrong*. There, the defendant was charged with bank robbery and wanted to show that another man, who matched the robber's description, had spent some of the bait money. 621 F.2d at 953. We held that the district judge had abused his discretion in excluding the evidence. *Id.*

■ *Armstrong* doesn't help the government because it did not purport to set a minimum level for probative value under Rule 403. Nor could it, as probative value must be weighed against offsetting factors, such as delay, which differ in every case. Moreover, probative value itself can only be determined in light of the evidence and argu-

---

**5.** The other dangers and considerations listed in Rule 403 only negligibly affect the balance in this case. Hoskie was not on trial and would have come before the jury only as a witness, if at all. The extent to which the evidence would have prejudiced him was thus only a minor factor in determining whether it was admissible. The Hoskie evidence was also neither cumulative nor would its introduction have been a waste of time: No other evidence about Hoskie was introduced and the Hoskie evidence was highly probative.

ments of a particular case. In *United States v. Crenshaw*, 698 F.2d 1060 (9th Cir.1983), for example, the defendant wanted to prove that he hadn't planned the robbery. *Id.* at 1064–65. The government argued that the evidence was irrelevant because the defendant had been convicted of piloting the getaway plane, not planning the robbery. *Id.* at 1065. We rejected this argument, noting that "after the Government presented proof from which ... the jury might 'reasonably infer' that [defendant] planned the robbery, [defendant] should have been permitted to introduce evidence to rebut that inference." *Id.* at 1066; *see also United States v. Whitman*, 771 F.2d 1348, 1351 (9th Cir.1985) ("[O]nce the government raised the issue, the defendant should have been permitted to rebut it.").

The Hoskie evidence, when evaluated in context, is no less probative than the evidence improperly excluded in *Armstrong:* It bore a direct relationship to Crosby's defense that someone else had committed the crime; it helped develop Crosby's claim that he was prejudiced by sloppy police work; it cast doubt on Dorothy's testimony that Crosby had punched her on the night of the assault.

The government also cites *United States v. Spencer*, 1 F.3d 742 (9th Cir.1992), a felon-in-possession case. The defendant there was a passenger in a car and a gun was found under his seat. *Id.* at 743. He argued that the district court abused its discretion in disallowing evidence that, a week after his arrest, the owner of the car was stopped while driving another car and a gun was found under the driver's seat. *Id.* at 743–44. We held that the excluded evidence was irrelevant as it would have shown only that the gun belonged to the owner of the car, while the dispositive issue was whether defendant knew the gun was under the seat, regardless of ownership. *Id.* at 745 n. 2; *see also United States v. Stewart*, 770 F.2d 825, 830 (9th Cir.1985) ("The paraphernalia might have tended to show that [co-defendant] was a drug distributor, but it did not show that [defendant] was not a drug distributor.").

■■■ Crosby's case is distinguishable. The central question here was "Who beat Dorothy?" Because the government did not

contend that Crosby and Hoskie acted in concert, inculpating Hoskie would have tended to exculpate Crosby. The excluded evidence could thus have caused the jury to develop a reasonable doubt by suggesting that someone other than the defendant was in a position to have beaten Dorothy, that a competent investigation might have identified that person, and that Dorothy was lying when she pointed the finger at Crosby. In such circumstances, we are guided by the words of Wigmore:

> [I]f the evidence [that someone else committed the crime] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt.

1A John Henry Wigmore, Evidence in Trials at Common Law § 139 (Tillers rev. 1983). The district court abused its discretion by excluding the Hoskie evidence.

### III

■■■ Having found error, we must next determine whether it was harmless. In *United States v. Hitt*, we noted that there was a conflict in the standard of review for nonconstitutional error: While some cases required a "fair assurance" of harmlessness, others required that an error be "more likely than not" harmless. *See* 981 F.2d 422, 425. We later explained, however, that the Supreme Court had indicated we must review for a "fair assurance" of harmlessness and so the "more likely than not" standard could be nothing more than a restatement of the "fair assurance" standard. *See United States v. Brooke*, 4 F.3d 1480, 1488 (9th Cir.1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). We therefore consider whether there is a fair assurance that the error in this case was harmless.

■■■ We have already explained the ways in which the Hoskie evidence would have bolstered Crosby's defense. *See* pp. 1347–48 *supra.* At the same time, the government's case was hardly overwhelming. *See Hitt*, 981 F.2d at 424 (error not harmless in close

case); *United States v. Hill,* 953 F.2d 452, 458–59 (9th Cir.1991) (same); *White v. Cohen,* 635 F.2d 761, 763 (9th Cir.1981) (same); *cf. Armstrong,* 621 F.2d at 953 ("We disagree ... that the exclusion of evidence ... requires reversal of the convictions for the other two crimes. The evidence linking appellant to the Bank of America robbery was overwhelming."). While Dorothy's testimony was probative, it was undercut by the fact that she had consumed large quantities of alcohol just prior to being beaten, admitted to having lapses of memory and continuously changed her story. The only other evidence were some inconclusive blood stains and an ambiguous statement from Crosby. We cannot say with assurance, fair or otherwise, that exclusion of the Hoskie evidence did not change the outcome.

**REVERSED.**