M. SMITH, Circuit Judge,
with whom SILVERMAN and BEA, Circuit Judges, join, concurring in the judgment:
The “absolute disparity” test, which we have employed for nearly forty years, leaves no doubt that Hernandez-Estrada’s fair cross section claims fail under Duren’s second prong. See Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). For this reason, I agree with the majority that we should affirm the judgment of the district court. The majority, however, declines to confine its opinion to answering the questions that are necessary to the resolution of this ap *1171 peal. Instead, it treats this straight-forward case as a convenient Rocinante that it can mount like a knight-errant to challenge the specter of windmill giants on the distant horizon — be they real or imagined. I decline to join the majority’s glorious quest.
By overruling our circuit precedent requiring that district courts exclusively apply the “absolute disparity” test to fair cross section claims, the majority needlessly raises a host of difficult questions for which there are no clear answers, and it leaves trial courts with little guidance on how to fulfill their responsibilities in such cases. The resulting legal vacuum will likely trigger an avalanche of fair cross section claims that have almost no chance of success under Duren, but which will burden the courts for years without meaningfully improving the administration of justice.
We apply a three-part test to determine whether a jury selection process complies with the fair cross section requirement. Id. To establish a prima facie fair cross section claim, the defendant must show: (1) that the group alleged to be excluded is a “distinctive” group in the community; (2) that the representation of this group in jury pools from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. Id.
In assessing Duren’s second prong, we require statistical data demonstrating that “the jury pool does not adequately represent the distinctive group in relation to the number of persons in the community.” United States v. Esquivel, 88 F.3d 722, 726 (9th Cir.1996). Until today, we have repeatedly held that courts in this circuit must use the “absolute disparity” test to analyze this statistical data. See, e.g., United States v. Rodriguez-Lara, 421 F.3d 932, 943-44 (9th Cir.2005); United States v. Sanchez-Lopez, 879 F.2d 541, 547 (9th Cir.1989); United States v. Potter, 552 F.2d 901, 905-06 (9th Cir.1977). While the “absolute disparity” test is not flawless,[1] we have explained that this specific mode of analysis is particularly useful in assessing whether the fair cross section requirement has been violated because the analysis focuses on “people and not percentages.” Potter, 552 F.2d at 905. That is, the “absolute disparity” test looks at the effect of a given deviation on the actual numerical composition of grand juries, and assesses whether the absence of such a deviation would affect jury composition in a way that meaningfully affects a defendant’s Sixth Amendment rights.[2]
*1172 Today the majority announces that it is abandoning “our exclusive reliance on the absolute disparity test.” But in so doing, the majority “decline[s] to confíne district courts to a particular analytical method.” Instead, the majority explains that “the appropriate test or tests to employ will largely depend on the particular circumstances of each case,” and it encourages courts to use “one or more of a variety of statistical methods to respond to the evidence presented.” However, the majority also notes that, like the “absolute disparity” test, each of these alternative statistical methods is likewise flawed.
Hereafter, trial courts will be charged with making ad hoc determinations regarding which statistical method, or combination of statistical methods, should be used to assess individual fair cross section claims. Yet, the majority provides little more than abstractions to guide the trial courts. While the majority discusses the benefits and disadvantages of a number of statistical frameworks, it explicitly declines to advise trial courts as to when and how these frameworks should be employed. The majority even declines to illustrate how the principles announced today would apply to the facts of this case. In so doing, the majority leaves unclear what role the “absolute disparity” test now plays, when alternative statistical methods should be employed, and which combination of statistical methods are appropriate under what circumstances.
Even more troubling is that the majority’s injection of these uncertainties into our jurisprudence is entirely unnecessary to the disposition of this case. The majority concludes that, regardless of any statistical disparities in the jury pool from which Hernandez-Estrada’s grand jury was selected, his fair cross section claims fail under Duren’s third prong, because he failed to provide evidence that any un-derrepresentation was systematic in nature. In reaching this conclusion, the majority seems to shift the focus of fair cross section claims from Duren’s second prong to its third. But the majority provides no guidance as to how systematic underrep-resentation can be demonstrated where, as here, the source of the purported un-derrepresentation does not appear on the face of a district’s jury questionnaire. See Duren, 439 U.S. at 366-67, 99 S.Ct. 664 (holding that underrepresentation was systematic where the jury questionnaire permitted women, but not men, to opt out of jury service).
Both the district court and our three judge panel concluded that, under the “absolute disparity” test, Hernandez-Estrada’s fair cross section claims fail as a matter of law. I would affirm on the same basis, and I would only consider whether a change in our fair cross section jurisprudence is warranted when the outcome of the case requires such a determination.
I respectfully concur only with the judgment.

. See, e.g., Rodriguez-Lara, 421 F.3d at 943 n. 10 ("The necessary implication of [the rule] is that if a distinctive group makes up 7.7% or less of the community, then the fair cross-section requirement offers no redress even if that group is entirely shut out of the jury pool.” (emphasis omitted)).

. See Potter, 552 F.2d at 906. The fair cross section requirement is grounded in a defendant’s Sixth Amendment right to a trial by an impartial jury. See Taylor v. Louisiana, 419 U.S. 522, 526-30, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Unlike Batson challenges, which protect potential jurors’ equal protection rights, see Batson v. Kentucky, 476 U.S. 79, 84, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), fair cross section claims focus on whether a group's disproportionate representation on a jury wheel undermines the fairness of a defendant’s indictment or trial, Taylor, 419 U.S. at 526-30, 95 S.Ct. 692. The “absolute disparity” test is useful in conducting this analysis, because, unlike other statistical methods, it looks at how statistical disparities actually affect jury composition. Potter, 552 F.2d at 906. As a statistical matter, correcting an absolute disparity of less than 4.3% will, on average, result in the addition of less than one group member on a grand jury of 23. This small effect is not "substantial,” and cannot be said to affect the fairness of a defendant’s trial. Id.; see also United States v. Armstrong, 621 F.2d 951, 956 (9th Cir.1980). Applying *1172 this rationale, we have accepted absolute disparities as high as 7.7%. United States v. Suttiswad, 696 F.2d 645, 649 (9th Cir.1982). On average, a 7.7% disparity will result in an under-representation of 1.76 group members on a grand jury of 23. Id. This effect is also insubstantial. Id.