

**FILED**

JUN 22 2023

**SUPREME COURT OF GUAM**
BY: ___2:15pmc___

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

v.

## JOSHUA RIVERA PALACIOS,
Defendant-Appellant.

Supreme Court Case No.: CRA21-003
Superior Court Case No.: CF0441-19-01

## OPINION

## Cite as: 2023 Guam 5

Appeal from the Superior Court of Guam
Argued and submitted on December 14, 2022
Hagåtña, Guam

Appearing for Defendant-Appellant:
Braddock J. Huesman, *Esq.*
Deborah E. Fisher, *Esq.*
Fisher Huesman P.C.
Core Pacific Bldg., Ste. 302
545 Chalan San Antonio
Tamuning, GU 96913

Appearing for Plaintiff-Appellee:
Marianne Woloschuk, *Esq.*
Assistant Attorney General
Office of the Attorney General
Prosecution Division
590 S. Marine Corps Dr., Ste. 901
Tamuning, GU 96913

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.[1]

**CARBULLIDO, C.J.:**

[1]     Defendant-Appellant Joshua Palacios appeals his conviction for murder as a first-degree felony with a special allegation of possession and use of a deadly weapon in the commission of a felony. He asks this court to vacate his conviction, grant him a new trial, and remand the case for further proceedings. He argues the trial court abused its discretion in excluding Facebook videos and other evidence he wanted to introduce to present an alternative theory of the crime. Next, he believes the trial court committed reversible error in allowing two witnesses to assert blanket Fifth Amendment privilege, rather than on a question-by-question basis. Third, he contends that the court violated his Sixth Amendment right to a fair trial in automatically excluding all potential jurors over the age of 65.[2]

[2]     We hold that the trial court's decision to exclude videos and other evidence was properly made based upon a Guam Rule of Evidence 403 weighing that found the probative value was substantially outweighed by the dangers of unfair prejudice, risk of confusion of the issues, and misleading the jury. We agree that the trial court erred in allowing witnesses to invoke the Fifth Amendment without a showing on the record of the basis for that decision. But we find this to be harmless error. Finally, because age is not recognized as a marker of a distinct group under *Duren v. Missouri*, 439 U.S. 357 (1979), Palacios has not shown a *prima facie* violation of the right to a

---

[1] The signatures in this opinion reflect the titles of the justices at the time this matter was argued and submitted.

[2] Initially, Palacios raised a fourth issue. He argued that the Superior Court's decision to conduct jury selection and the start of trial at the Academy of Our Lady of Guam impermissibly entangled the court with religion based on *Lemon v. Kurtzman*, 403 U.S. 602 (1971). Appellant's Br. at 7 (Mar. 11, 2022). Because of the recent decision in *Kennedy v. Bremerton School District*, 142 S. Ct. 2407 (2022), the parties believe *Lemon* is no longer good law. Joint Mot. Re. Briefing at 3 (July 1, 2022). Thus, Palacios has withdrawn the issue and reserved it, if necessary, for a writ of habeas corpus. Notice of Withdrawal of Issue IV at 1 (Aug. 8, 2022).

jury made up of a fair cross-section of the community.  We deny Palacios's appeal on all three grounds.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**[3]**　　In 2019, Keith Castro was shot and killed in Yigo.  He had been staying with an acquaintance, Matthew Sablan, and on the evening of Castro's death, various people had gathered at the residence.  Among them was Thomas Taitano, who had a personal issue with Castro and confronted him about it.  The two men got into a physical fight.  Amid a chaotic scene, apparently including a second man attacking Castro, a bullet was fired into Castro's chest as he lay on the ground.  He died because of this injury.  Both Taitano and the second man left the scene before emergency responders arrived.

**[4]**　　Sablan described the shooter as bald.  Meanwhile, Taitano avoided police until August 2, 2019, at which time he turned himself in and identified Palacios as the shooter.  Sablan later identified Palacios as the shooter in a photo lineup.

**[5]**　　Taitano provided an address in Barrigada where Palacios could be found, and a SWAT team apprehended him there.  A subsequent search of the premises led to the recovery of two firearms.  Both were tested by a firearms expert, and the analysis revealed that a bullet fired from one weapon, a 9mm Tanfoglio pistol, matched the bullet taken from Castro's body.  Palacios was indicted.

**[6]**　　During jury selection, the jury pool apparently did not include community members older than 65.  Trial began and continued for thirteen days.  Conversation on the record reveals that the court and the defendant believed excluding persons older than 65 to be official Judiciary of Guam policy.  On the sixth day, when defense counsel learned of the exclusion of this group, he objected and moved for a mistrial, which was denied.

**[7]**       Throughout trial, defense counsel sought to introduce evidence intended to show that parties other than Palacios had motive to kill Keith Castro.  Among this evidence were Facebook videos Castro had created in which he disparaged certain individuals and accused them of crimes and misdeeds; he also alleged that some people wanted him dead.  The prosecution objected to the admission of this evidence, on several grounds, by way of a motion *in limine*.  The court initially prohibited the videos because it had not had a chance to review them, and ultimately ruled their contents were not of consequence to the trial.  Likewise, under Guam Rule of Evidence ("GRE") 403, the court limited defense counsel's line of questioning as to the contents of the videos unless they dealt with Castro's death, for concern that otherwise it may be unduly prejudicial to the prosecution's case and misleading to the jury.

**[8]**       On the twelfth day of trial, the defense called Troy Torres and Johnnie Rosario to the stand.  Both witnesses immediately invoked the Fifth Amendment as to any question, at which point the court dismissed them, subject to subpoena.  As to Rosario, defense counsel requested the court force the witness to make representation as to why she believed herself to be in criminal peril; this request was denied.  Following this decision, defense counsel again moved for a mistrial.  This, too, was denied.  The court informed defense counsel that the two witnesses could later be forced to answer limited questions if the court believed their information was not unduly prejudicial or misleading to the jury.  The next day, the court informed Palacios on the record that it believed there was "some rational or reasonable basis for [Torres and Rosario] to invoke [their] Fifth Amendment right," but did not explain the reasons.  Transcript ("Tr.") at 101 (Jury Trial, Feb. 3, 2021).

**[9]**       Palacios was convicted of murder in the first degree with a special allegation of possession and use of a deadly weapon.  Final judgment was entered, and Palacios was sentenced to life in

prison with a possibility of parole after fifteen years, with a consecutive sentence of fifteen years for the special allegation. He was also ordered to pay a $5,000 fine, with further liability for any restitution to the family of Keith Castro. Palacios timely filed a notice of appeal.

## II. JURISDICTION

[10]     This court has jurisdiction over an appeal from a final judgment of the Superior Court of Guam. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 118-5 (2023)); 7 GCA §§ 3107, 3108(a) (2005); 8 GCA § 130.15(a) (2005).

## III. STANDARD OF REVIEW

[11]     "An evidentiary ruling by the trial court is . . . reviewed for an abuse of discretion and is not reversed unless prejudice affecting the verdict is shown." *Fenwick v. Watabe Guam, Inc.*, 2009 Guam 1 ¶ 6. Alleged Fifth Amendment violations are reviewed *de novo*. *People v. Muritok*, 2003 Guam 21 ¶ 10. Sixth Amendment challenges to a jury's composition are reviewed *de novo*. *United States v. Torres-Hernandez*, 447 F.3d 699, 703 (9th Cir. 2006).

## IV. ANALYSIS

### A. The Superior Court's Evidentiary Decisions Were Not an Abuse of Its Discretion

#### 1. The Superior Court's ultimate decision to exclude the Facebook videos was properly made after viewing them

[12]     Palacios first asserts the Superior Court improperly excluded Facebook videos he sought to introduce as evidence because it had not viewed them before making that decision. *See* Appellant's Br. at 22-24 (Mar. 11, 2022).

[13]     We review evidentiary rulings for abuse of discretion and will not reverse absent prejudice affecting the verdict. *Fenwick*, 2009 Guam 1 ¶ 6. GRE 402 allows all relevant evidence to be admitted unless otherwise excluded by the U.S. Constitution, the Organic Act, the laws of Guam, or another rule of evidence. Evidence is relevant if it tends to make a fact that is consequential to

the action more or less probable than it would be without the evidence. GRE 401. Relevant evidence, however, may be excluded by the court if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasted time, or needlessly cumulative evidence. GRE 403. A trial court's Rule 403 determinations are reviewed with "considerable deference." *People v. Fisher*, 2001 Guam 2 ¶ 15 (quoting *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000)).

[14]    When defense counsel first sought to introduce the videos, the Government objected because it had only received those exhibits on that same day, the first of trial; it objected as well for relevance and on GRE 403 grounds. The trial court initially excluded the videos until it had a chance to review them. On the fourth and eleventh days of trial, defense counsel identified further videos he wished to introduce.

[15]    Although it had not made a final decision about the evidence, the court allowed for the possibility of the defense to recall witnesses if it were admissible. Before defense counsel presented his case-in-chief, the trial court had reviewed all the videos in its possession, and so all subsequent evidentiary decisions were made on that basis. Likewise, the court reviewed the later-received videos. So, Palacios was not prejudiced by the initial decision to omit the videos, and the final decision was made after a proper review.

### 2. The Superior Court's decision to exclude speculatory evidence on a possible alternative theory of the crime properly weighed the probative value of the evidence against the possibility of confusing or misleading the jury

[16]    Palacios argues that even if the decision to omit the videos was properly informed, omitting what he believes to be a compelling alternative theory is an abuse of discretion and reversible error. Appellant's Br. at 24, 33-34. Palacios maintains that in denying evidence on the motive, means, and opportunity other individuals had to kill Keith Castro, the Superior Court denied him the

presentation of a complete defense, thereby also denying him a fair trial. *Id.* at 15-16. Placing great emphasis on *United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996), he believes that the presentation of an alternate theory of a crime is probative if it (1) shows that someone other than the defendant had opportunity, ability, and motive to kill the victim; (2) supports an alternate theory of the murder; and (3) answers the question, "if Defendant[] did not commit the crime, who did?" Appellant's Br. at 20. Palacios argues that because this test favors admission, and because the Superior Court did not expressly explain why the evidence's probative value was substantially outweighed, it misapplied GRE 403. *Id.* at 30-31. He urges that, where evidence is intended to create doubt as to the perpetrator of a crime, it is the jury's, not the judge's, role to determine whether that doubt is purely speculative. *Id.* at 18 (citing *Crosby*, 75 F.3d at 1349).

[17]    In *Crosby*, the victim was assaulted, and blamed the defendant with whom she lived and who had been drinking with her on the night of the crime. 75 F.3d at 1345-46. Later, however, the victim said that she could not remember who hit her. *Id.* at 1346. Just before trial began, she vacillated between these two positions, ultimately testifying that the defendant had assaulted her. *Id.* Finding that the evidence could confuse or mislead the jury, or delay proceedings, the trial court denied the defendant the opportunity to introduce evidence that the victim's husband had been nearby on the night of the assault and that he had a history of violence toward both the victim and the defendant. *Id.* Because the victim had moved back in with her husband right before trial, this evidence provided an alternate theory of the assault. *Id.* at 1348. The appellate court found this to be harmful error, holding that this evidence would tend to show that someone other than the defendant had the means, motive, and opportunity to commit the crime, thereby bolstering the defense. *Id.* at 1347, 1349-50. This was significant for the court because there was little direct

evidence of what had happened. *Id.* at 1347-48. It found the risk of misleading or confusing the jury, or of delay to the trial, to be minimal. *Id.* at 1348.

[18]     Palacios also calls our attention to an unpublished case from the Ninth Circuit, *United States v. War Club*, 403 F. App'x 287 (9th Cir. 2010). Appellant's Br. at 19-20. There, the defendant was convicted of murder after being prevented from introducing evidence that the victim's brother had a motive for the killing. *War Club*, 403 F. App'x at 289. The Ninth Circuit held that this evidence presented small risk of unfair prejudice, and that its denial effectively deprived the defendant of a valid alternative theory of the crime. *Id.*

[19]     Palacios complains that the excluded evidence here, both testimonial and in the Facebook videos, was relevant because it was probative of the means, motive, and opportunity others had to commit the murder, as in the above cases. Appellant's Br. at 14. His alternate theory turned on the unpopularity of Keith Castro among a group of individuals and the reasons for this unpopularity. This evidence centered on: several Facebook postings Castro had made insulting Thomas Taitano and others close to him; a response Facebook video from Troy Torres identifying Castro as a "police snitch;" further Facebook postings in which Castro expressed that people wanted him dead; and possible documentary evidence on Castro's SD card that might have embarrassed or incriminated others including one Layton Borja. *Id.* at 7-8.

[20]     This case can be distinguished from both *Crosby* and *War Club*.[3] Both cases feature identifiable alternative criminal offenders. As stated in *Crosby*, "[f]undamental standards of relevancy . . . require the admission of testimony which tends to prove that a person other than the

---

[3] In addition, we decline to hold that "the points raised by these cases [was] conceded" by the People. Appellant's Reply Br. at 5 n.2 (July 5, 2022). First, the case cited by Palacios for this point is inapposite; *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016), dealt with waiver of an argument at the trial court level, not of issues before an appellate court. Second, while the People may not have cited to *Crosby* and *War Club* specifically, they nevertheless argued there was no abuse of discretion on the part of the trial court. That is sufficient to preserve their arguments on this issue.

defendant committed the crime that is charged." 75 F.3d at 1347 (alterations in original) (quoting *United States v. Armstrong*, 621 F.2d 951, 953 (9th Cir. 1980)). Here, the excluded evidence did not tend to prove a particular person other than the defendant committed the crime, but demonstrated Castro's general unpopularity.

[21]    Moreover, the excluded evidence, having been created before the crime, could simply suggest a motive for Castro's murder. Unlike in *War Club*, however, where the Ninth Circuit found evidence of motive to be a basis for a valid alternative theory of the crime, 403 F. App'x at 289, here, the trial court allowed evidence of motive, excluding only particular sorts of evidence that it found to be misleading or confusing. *See, e.g.*, Tr. at 26-27 (Jury Trial, Feb 2, 2021). Furthermore, this evidence only had the potential to implicate Josh or Thomas Taitano. This is because, of all the individuals mentioned or involved in the social media postings, only Josh and Thomas Taitano were identified at the scene of the crime.

[22]    Palacios was not prevented from introducing evidence that Josh Taitano was the actual killer. Palacios had the opportunity to question eyewitnesses to the crime to develop direct evidence of that possibility. Palacios might have called Josh Taitano himself to testify but chose not to. Palacios suggested that Josh Taitano had the motive to kill Castro but refrained from directly asking any witness whether this was what they had seen. Palacios instead focused on Matthew Sablan's statement to police that the shooter was bald, and that Josh Taitano was bald. Sablan, however, also testified that Palacios looked bald to him on the night of the shooting, that Palacios was the shooter, and that Josh Taitano was not. No witness discussing their perception of the murder ever stated that Josh Taitano was involved in the altercation that led to Castro's death. Though the Facebook videos may have suggested Josh Taitano had the motive to kill Castro, their exclusion did not deny Palacios an alternate theory of the crime.

**[23]**    As for Thomas Taitano, though the Facebook videos which contributed to the animosity that led him to confront and attack Keith Castro were excluded, testimony on his motive was allowed, including testimony about Castro's postings on social media.  The defense was able to—and did—raise the possibility that Thomas Taitano had committed the murder when Thomas Taitano took the stand himself.

**[24]**    Palacios was not denied the opportunity to present an alternate theory of the crime.  What he was denied, for concern it would mislead or confuse the jury, was the introduction of certain video evidence that, whatever it suggested about the ill will others had for Castro, did not prove anyone other than Palacios himself had a hand in Castro's murder.

**[25]**    Likewise, Palacios is unconvincing in arguing that the trial court misapplied GRE 403.  He argues that the court did not consistently state the full language describing GRE 403's test when making evidentiary rulings, and that in practice it was applying a weaker standard for exclusion than the rule demands.  *See* Appellant's Br. at 24, 26.  He argues that the court improperly excluded evidence that was merely prejudicial rather than weighing whether it was unfairly prejudicial to such a degree that it substantially outweighed its probative value.  *Id.* at 26.

**[26]**    Though the court did not always describe the full weighing standard upon making an evidentiary decision, it understood the test and applied it to its evidentiary decisions, having referenced the test throughout the trial.  *See* Tr. at 90 (Jury Trial, Jan. 25, 2021); Tr. at 119, 124 (Jury Trial, Jan. 26, 2021); Tr. at 44, 97 (Jury Trial, Feb. 1, 2021).  At one point, the court expressed why it was excluding the videos under GRE 403.  Tr. at 25-27 (Jury Trial, Feb. 2, 2021).  It described the information in the videos as "border[ing] on relevance for . . . being consequential to the issues at trial."  *Id.* at 26.  The court explained that it felt the evidence might be "unduly prejudicial," with the potential to confuse or mislead the jury, since the videos did not point to an

alternative shooter or relate to the alleged murder weapon in Palacios's home. *Id.* at 26-27. So long as the record reflects that the trial court performed the required balancing, a trial court does not have to consistently and expressly relate its ruling to the GRE 403 weighing when making evidentiary rulings. *See United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir. 1987). The language used by the trial court acknowledges that rule's requirements.

[27]   A trial court's Rule 403 determinations are due "considerable deference." *Fisher*, 2001 Guam 2 ¶ 15 (quoting *Hankey*, 203 F.3d at 1167). The court reviewed all evidence before making a decision. Despite Palacios's protestations, the court's judgments as to the probative value of the evidence as compared to the danger of unfair prejudice, confusion of the issues, or misleading the jury were made with an eye to the proper standard. It excluded evidence that did not prove someone other than Palacios pulled the trigger, or that would not have provided an alternative reason as to why Palacios was found with what was identified as the murder weapon. The trial court did not abuse its discretion.

## B. The Superior Court's Decision to Allow Witnesses to Make Blanket Invocations of the Fifth Amendment Was Harmless Error

[28]   Palacios argues his right to a fair trial was violated when the trial court let two witnesses assert a blanket Fifth Amendment privilege without asking about the basis for those invocations. Appellant's Br. at 35. Alleged Fifth Amendment violations are reviewed *de novo*. *Muritok*, 2003 Guam 21 ¶ 10. Courts around the country, both state and federal, prohibit blanket invocations of the Fifth Amendment and require the court to ask about the basis, because the privilege attaches only when there is danger of self-incrimination because to do otherwise would prevent legitimate discovery of nonprivileged information. *See, e.g.*, *United States v. Vavages*, 151 F.3d 1185, 1192 (9th Cir. 1998); *Chumley v. State*, 637 S.E.2d 828, 832 (Ga. Ct. App. 2006); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663-64 (7th Cir. 2002).

[29]     This prohibition is not without limit.  Many courts have recognized that a blanket claim of privilege can be sustained, but only if "the court, based on its knowledge of the case and of the testimony expected from the witness, can conclude that the witness could 'legitimately refuse to answer essentially all relevant questions.'"  *E.g.*, *United States v. Tsui*, 646 F.2d 365, 368 (9th Cir. 1981) (quoting *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980)); *United States v. Gomez-Rojas*, 507 F.2d 1213, 1220 (5th Cir. 1975); *State v. Nieves*, 873 A.2d 1066, 1071 (Conn. App. Ct. 2005).  It is also generally recognized that neither party should be allowed to call witnesses it knows will invoke the Fifth Amendment in front of the jury and then be subject to inferences in a form not subject to cross-examination.  *See State v. Hughes*, 493 S.E.2d 821, 823-24 (S.C. 1997) (collecting cases).  When a constitutional error has been made, for it to be held harmless the court must declare that it was harmless beyond a reasonable doubt.  *Chapman v. California*, 386 U.S. 18, 24 (1967).

[30]     Before they took the stand, the trial court discussed the offer of proof on what defense counsel intended to develop with Troy Torres and Johnnie Rosario, while entertaining the Government's objections.  Defense counsel represented his intention to illustrate, with testimony about Facebook videos that Torres and Rosario had made, that Castro had other enemies and that Rosario was seeking to acquire the SD card from Castro's phone.  Ultimately, the court informed defense counsel it would not allow questioning that did not bear directly on who the killer was and why the firearm identified as the murder weapon was found in Palacios's possession.  This effectively barred questioning regarding the Facebook videos and Rosario's interest in acquiring Castro's SD card.

[31]     Both witnesses, upon taking the stand, invoked the Fifth Amendment when they were asked a substantive question.  The trial court, defense counsel, and Government counsel agreed that once

Torres invoked the Fifth Amendment, defense counsel could no longer continue questioning, although defense counsel noted that Torres needed to be in criminal peril to assert it. When Rosario asserted, defense counsel requested that some representation be made as to why she felt imperiled. No such representation was made on the record, but on the next day, the trial court stated that, "after reviewing any and all things put forward relating to them, potentially, as witnesses, the Court does believe that there is some rational or reasonable basis for them to invoke such right. . . . I just want to put on the record I've made that determination, that there's a basis for them to do so." Tr. at 101 (Jury Trial, Feb. 3, 2021).

[32]     Following the court's preliminary guidance about what would be admissible, it is not clear what questions Palacios's counsel intended to put to the witnesses, and the trial court did not explain on the record its reasoning in finding that the witnesses had a basis to invoke blanket privilege. Thus, it is impossible to reliably determine whether it properly concluded that the witnesses had a rational or reasonable basis to "legitimately refuse to answer essentially all relevant questions." *Tsui*, 646 F.2d at 368. This is error. The trial court should have required a showing, in camera, as to the basis of the invocations, and then stated on the record its ruling on that basis. This approach would have provided a clean record against which we could evaluate the decision. Without this information, we are left to speculate on the trial court's justification for allowing blanket invocations.

[33]     The trial court also had the ability to limit questioning to areas it found appropriate, as it did with other witnesses throughout the trial. This would have avoided the jury making inferences in a form not subject to cross-examination. Instead, the trial court chose, without justification on the record, to dispense with all questioning. Were the evidence against Palacios more ambiguous, this may have required us to reverse his guilty verdict.

**[34]** Ultimately, however, neither Torres nor Rosario were eyewitnesses present at the scene of the crime. Palacios was apprehended while lying on a mattress under which a pistol identified as the murder weapon was recovered. The weight of the evidence against Palacios is strong, and it is highly unlikely that Torres or Rosario had testimony that would have weakened it. We find the court's error in allowing blanket invocations of the Fifth Amendment to be harmless beyond a reasonable doubt.

## C. The Exclusion of Potential Jurors Older than 65 Was Justified Because Age Is not a Marker of a Distinctive Group Under *Duren*

**[35]** While normally, members of the community older than 65 may elect to claim an exemption from jury service, 7 GCA § 22107(g) (2013), during the COVID-19 pandemic, it seems that these individuals were automatically excluded from the juror pool. The Government asks us to take judicial notice of Administrative Order No. ADM20-260 and a form letter with an accompanying questionnaire issued to prospective jurors. Mot. Jud. Notice (Dec. 7, 2022). We do so but note that these documents do not expressly detail any court policy excluding jurors older than 65. Because both parties and the trial court seem to believe that this was the case, though, we assume, *arguendo*, that it was. Palacios argues that in denying him a jury made up of a fair cross-section of the community, this policy violated his Sixth Amendment right to a fair trial. Appellant's Br. at 6. Sixth Amendment challenges to a jury's composition are reviewed *de novo*. *Torres-Hernandez*, 447 F.3d at 703.

**[36]** Jury pools "must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975). In *Duren v. Missouri*, the U.S. Supreme Court established the test for showing a *prima facie* violation of this "fair cross-section" requirement:

> [T]he defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

439 U.S. 357, 364 (1979).

[37] According to the most recent census, those 65 and older make up 11.2% of Guam's population. Bureau of Stat. and Plans, United States Census 2020 Guam, Demographic Profile Dashboard, http://bsp.guam.gov/census-of-guam (last visited June 13, 2023). Their total exclusion would not generally be fair and reasonable in relation to their numbers in the community. The Government does not dispute that excluding the group from the jury pool was systematic, this apparently being the court's express policy during the pandemic.

[38] The question of the distinctiveness of over-65s is less clear. Those older than 65 are an identifiable group in the community. Guam law allows them to claim exclusion from jury service, and they are recognized in the CHamoru language as Manåmko. But every federal appellate court that has considered the matter has concluded that age does not mark a "distinctive" group for *Duren* purposes. *E.g.*, *United States v. Potter*, 552 F.2d 901, 905 (9th Cir. 1977); *United States v. Olson*, 473 F.2d 686, 688 (8th Cir. 1973); *Silagy v. Peters*, 905 F.2d 986, 1010-11 (7th Cir. 1990); *Barber v. Ponte*, 772 F.2d 982, 1000 (1st Cir. 1985) (collecting cases).

[39] As explained in *Silagy v. Peters*, the concept of distinctiveness must be linked to the purposes of the fair cross-section requirement. 905 F.2d at 1010. Those purposes are identified in *Taylor v. Louisiana*, 419 U.S. at 530-31:

> (1) to ensure that the common-sense judgment of the community will act as a hedge against the over-zealous or mistaken prosecutor;
>
> (2) to preserve public confidence in the criminal justice system by ensuring that the community participates in the administration of our criminal laws; and

(3) to further the belief that sharing in the administration of justice is a phase of civic responsibility.

[40]    Because community members older than 65 may always claim an exemption from jury service, their automatic, rather than elected, exclusion does no great damage to these purposes. While it may be true that members of the community aged 65 and older bring a unique perspective to jury proceedings, we do not believe that their required exclusion defeated the ability of the broader community to render common-sense judgment during the coronavirus pandemic. Since any policy automatically excluding all elderly potential jurors was temporary, we do not find it threatening to the public's confidence in the criminal justice system. Finally, we recognize that the automatic, rather than elective, exclusion of elderly community members implicates the Sixth Amendment concern that all participate in the administration of justice in a slightly more direct way. We also note that this exclusion occurred during emergency health circumstances due to the COVID-19 pandemic and was temporary. No harm was done to the understanding that justice— and more pertinently its administration—are responsibilities borne by the entire community.

[41]    This court holds with the mass of federal circuit courts which have ruled that age is not a marker of a distinctive group under *Duren*, and that Palacios has not established a *prima facie* violation of the fair cross-section requirement.[4] We deny Palacios's appeal on this Sixth Amendment ground.

## V. CONCLUSION

[42]    The trial court's decision to exclude the videos and other evidence was properly based upon a GRE 403 weighing that found the probative value was substantially outweighed by the dangers

---

[4] In doing so, we reject Palacios's call to adopt the reasoning in *Williams v. State*, 342 So. 2d 1325 (Ala. Crim. App. 1976), *aff'd*, 342 So. 2d 1328 (Ala. 1977). As laid out above, the holding in that case is out of step with nearly every federal circuit court to consider the issue. It also seems to be an outlier among state courts as well. *See People v. McCoy*, 47 Cal. Rptr. 2d 599, 602 (Ct. App. 1995).

of unfair prejudice, risk of confusion of the issues, and misleading the jury. The trial court committed error in allowing witnesses to make blanket invocations of the Fifth Amendment privilege against self-incrimination without representation about why they felt imperiled, but this error was ultimately harmless. We do not recognize age as a marker of a distinct group under *Duren*, and Palacios has not shown a *prima facie* violation of the right to a jury made up of a fair cross-section of the community. We **AFFIRM**.

 

 

|  |  |
|---|---|
| _____ | _____ |
| ROBERT J. TORRES | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |

 

_____
F. PHILIP CARBULLIDO
Chief Justice